# Wytheville.

## KARNES *v.* COMMONWEALTH.

### June 18, 1919.

1. JURY—*Time of Making Objections to Jurymen—"Impaneled."*—
The accused objected to the jury as impaneled, upon the ground
that it was illegally constituted and selected. It appeared that
six of the jurors who served were not in the list of jurors
named in the original *venire facias.* If this objection had
been made before the jury was sworn, and the record failed
to show that the additional jurors had been lawfully impaneled,
then it is clear that the motion should have been sustained.
The objection, however, was not made until after the jury had
been "impaneled." A jury is not impaneled until it has been
selected, found free from exceptions and duly sworn in the
case, and inasmuch as the clear inference is that the jury had
been sworn before the objection was made, it was properly
overruled under section 4018, Code of 1904, for it does not ap-
pear that the irregularity was intentional, or such as probably
to cause any injustice to the accused.

2. JURY—*Statutes—Reference to Summoning and Impaneling—Man-
datory or Directory.*—While the statutes with reference to the
summoning and impaneling of jurors in criminal cases are
mandatory and must be strictly followed, yet the appellate
court will indulge every proper presumption in favor of the
regularity of the proceedings, and will not reverse the case
where no injury is shown, unless the objection is made before
the jury is sworn.

3. JURY—*Jury of Vicinage—Constitutionality of Section 3055, Code
of 1904.*—Section 3055, Code of 1904, gives to the corporation
courts of the State concurrent jurisdiction with the circuit
courts over criminal offenses committed within one mile of a
city. This provision is not unconstitutional, as violative of the
constitutional right of the prisoner to have a jury of his vicin-
age. The word "vincinage," as used in the Constitution, corre-
sponds with the territorial jurisdiction of the court in which
the venue of the crime is laid. In the instant case the Corpora-
tion court of the city of Roanoke, under section 3055, Code of
1904, is vested with jurisdiction to try indictments for crime
committed within the city and within one mile of its corporate
limits, and this territory constitutes the district over which

the court has jurisdiction. Hence, a jury summoned from any part of that district is a jury of the "vicinage," or venue, of the crime.

4. DECLARATIONS AND ADMISSIONS—*Homicide*—*Admission of Declarations of Deceased as to Fear of Another than Accused.*—In a prosecution for homicide the court excluded evidence of accused of certain declarations made to him and to others by the deceased, indicating her fear of a third party, and his threats against her. Both accused and this third party had been criminally intimate with the deceased. The trial court admitted evidence of the actions of the deceased indicative of fear, but refused to admit evidence of her statements, most of which accompanied these actions.

*Held:* Error.

5. CIRCUMSTANTIAL EVIDENCE—*Admissibility of Evidence—Liberality.*—Much must be left to the discretion of the trial judge, but where the proper determination of a fact depends upon circumstantial evidence, the safe practical rule to follow is that in no case is evidence to be excluded of facts or circumstances connected with the principal transaction, from which an inference can be reasonably drawn as to the truth of a disputed fact. The modern doctrine in this connection is extremely liberal in the admission of any circumstance which may throw light upon the matter being investigated and while a single circumstance, standing alone, may appear to be entirely immaterial and irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.

6. DECLARATIONS AND ADMISSIONS—*Declarations Indicating a State of Mind—Verbal Acts as Exceptions to Hearsay Rule.*—Where the inquiry is as to the state of one's mind at a particular time, his statements and declarations indicating his state of mind are generally admissible. Such declarations, when made simultaneously with action, have been admitted as exceptions to the hearsay rule, and have been characterized as "verbal acts."

7. HOMICIDE—*Evidence—Criminal Law.*—Where there is a trend of facts and circumstances tending clearly to point out some other person as the guilty party, the prisoner may introduce any legal evidence which is available tending to prove that another person committed the crime with which he is charged.

8. HOMICIDE—*Instructions—Possession of Weapon.*—An instruction in a prosecution for homicide that when a mortal wound is given with a deadly weapon in the previous possession of the slayer without any, or upon very slight, provocation, it is *prima facie* willful, deliberate and premeditated killing, is erroneous, where there was no testimony which indicated that

the accused ever had a pistol or any other deadly weapon. In cases where the evidence shows or tends to show that the accused was in possession of such a weapon, and used it, such an instrucion would be proper.

9. INSTRUCTIONS—*Must be Based on the Evidence.*—Instructions should relate to the evidence in the case on trial, and that it is harmful error to give an instruction based upon assumptions of fact which does not appear in the evidence.

10. HOMICIDE—*Presence at Crime—Instructions.*—The mere presence of accused at the time the murder was committed was not alone sufficient to justify a conviction, and the refusal of an instruction to that effect is error, where there was evidence that he was with deceased when she was killed.

11. CRIMINAL LAW—*Inability to Disclose any Other Criminal Agent.*—Accused's case is not to be prejudiced by his own or the Commonwealth's inability to point out any other criminal agent.

12. NEW TRIALS—*Verdict Contrary to the Evidence—Homicide.*—In the instant case, according to the prisoner's testimony his relations with the deceased were friendly; he had neither motive nor provocation to commit the crime; the shot which killed the deceased was fired while the accused and she were together, out-of-doors, on a dark night. There was much to support and little to controvert this evidence. The circumstances relied upon to show the guilt of the prisoner were insufficient to sustain the conviction, and the trial court should have sustained the motion to set it aside.

Error to a judgment of the Corporation Court of city of Roanoke.

*Reversed.*

The opinion states the case.

*Hairston & Hairston* and *Hoge & Darnall,* for the plaintiff in error.

*Jno. R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Morton L. Wallerstein,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused was convicted of murder in the second de-

gree and sentenced to twelve years' confinement in the penitentiary.

[1, 2]   1. The prisoner objected to the jury as impaneled, upon the ground that it was illegally constituted and selected, and in support of his motion had the original *venire facias* made a part of the record.   His objection was overruled, and he excepted.

The question is controlled by section 4018 of the Code, the last paragraph of which provides that "no irregularity or error in drawing the names or in making out or copying or signing or failing to sign the list, or in summoning the persons named on the list, shall be cause for summoning a new panel or for setting aside a verdict or granting a new trial, unless objection thereto was made before the jury was sworn, and unless it appears that such irregularity, error, or failure, was intentional, or is such as to probably cause injustice to the Commonwealth or to the accused."

It appears that six of the jurors who served were not in the list of jurors named in the original *venire facias*.   If this objection had been made before the jury was sworn, and the record failed to show that the additional jurors had been lawfully impaneled, then it is clear that the motion should have been sustained.   It appears, however, from the bill of exception that this objection was not made until after the jury had been impaneled.   A jury is not impaneled until it has been selected, found free from exceptions and duly sworn in the case, and, in as much as the clear inference is that the jury had been sworn before the objection was made, it was properly overruled, for it does not appear that the irregularity was intentional, or such as probably to cause any injustice to the accused.   While the statutes with reference to the summoning and impaneling of jurors in criminal cases are mandatory and must be strictly followed, yet this court will indulge every proper presumption in favor of the regularity of the proceedings,

96

and will not reverse the case where no injury is shown, unless the objection is made before the jury is sworn.

[3] 2. The crime charged (which was the murder of a married woman who was habitually maintaining illicit relations with the prisoner, and had previously maintained similar relations with other men) was committed in the county of Roanoke, just outside of the city of Roanoke and within one mile of the city limits. The accused was indicted in the Corporation Court of the city of Roanoke. He demurred to the indictment, upon the ground that the venue of the crime was in the county of Roanoke, and that he could not be tried in the city, because, among other reasons, by section 8 of article I of the Virginia Constitution, he was entitled to a trial "by an impartial jury in his vicinage."

That the statute, Code section 3055, expressly gives the corporation courts of the State concurrent jurisdiction with the circuit courts over criminal offenses committed within one mile of a city, is clear. It is claimed, however, that this statute is unconstitutional, as violative of the constitutional right of the prisoner to have a jury of his vicinage.

The rule in England, from which we get the provision for a trial by a jury of the vicinage, is that the *vicinage* includes the county in which the crime is committed. In this country, likewise, while as a general rule the county constitutes the district (and hence the vicinage) of the court in which indictments for crime are prosecuted, still the true construction of the word *vicinage* as used in the Constitution is that it corresponds with the territorial jurisdiction of the court in which the venue of the crime is laid. In this case, the Corporation Court of the city of Roanoke, under the general statute referred to, is vested with jurisdiction to try indictments for crimes committed within the city and within one mile of its corporate limits, and this territory constitutes the district over which the court has

jurisdiction. Hence, a jury summoned from any part of that district is a jury of the "vicinage," or venue, of the crime. Had the accused been indicted in the county of Roanoke, the jury would have been summoned from some district of the county remote from the place of the crime, and the fact that this jury was summoned from the city of Roanoke, which constitutes a part of the district over which the corporation court has jurisdiction, is not objectionable and does not violate the constitutional provision that the prisoner is entitled to be tried by a jury of his vicinage. The statute has been in force for many years, many persons have doubtless been convicted thereunder, and its validity has been generally accepted. No constitutional right has been denied the accused, and no sufficient reason has been suggested which would justify us in holding the statute unconstitutional.

In *Ruffin's Case*, 21 Gratt. (62 Va.) 790, this court upheld the constitutionality of a statute which had been attacked on this ground, where a convict who had committed a crime in the county of Bath was tried in the Circuit Court of the city of Richmond, basing its ruling upon the fact that he was a convict in the penitentiary, under the control and subject to the laws which governed that institution and its inmates.

[4] 3. It is urged for the accused that the court erred in excluding evidence of certain declarations made to him and to others by the deceased, indicating her fear of one Agee, and his threats against her. This man Agee had also been criminally intimate with the deceased, and had been suspected of the crime (though he had, after an investigation, been released), and the statements which were excluded may be summarized thus: That while driving out with the accused on Thursday before the murder, which occurred on the following Saturday night, just before she passed a man named Strain, she pulled her hat down over

her face as though to conceal her identity, and said she did so because she was afraid Strain would tell Agee that she was riding out with the accused, and that Agee would kill her; that on Saturday, the afternoon of the murder, when by appointment she was with the accused, she kept looking back after she left the railroad station, because she was afraid that Agee was following her; that she feared violence from Agee; that she no longer went with Agee; that he told her he would kill her if he caught her with the accused; that she tried to get her mind off of Agee, but that he would come where she worked to see her. The trial court properly admitted evidence of the actions of the deceased, but refused to admit evidence of her statements, most of which accompanid these actions.

[5, 6] It would be vain to attempt to reconcile all of the conflicting cases as to when such statements can be admitted. Much must be left to the discretion of the trial judge, but where the proper determination of a fact depends upon circumstantial evidence, the safe practical rule to follow is that in no case is evidence to be excluded of facts or circumstances connected with the principal transaction, from which an inference can be reasonably drawn as to the truth of a disputed fact. (8 R. C. L., p. 180.) The modern doctrine in this connection is extremely liberal in the admission of any circumstance which may throw light upon the matter being investigated, and while a single circumstance, standing alone, may appear to be entirely immaterial and irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion. Where the inquiry is as to the state of one's mind at a particular time, his statements and declarations indicating his state of mind are generally admissible. Note, 95 Am. Dec. 68; *Mutual Life Ins. Co.* v. *Hillmore,* 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 707. Such declarations, when

made simultaneously with action, have been admitted as exceptions to the hearsay rule, and have been characterized as "verbal acts." Mr. Wigmore (3 Wigmore on Evidence, sec. 1772) credits Mr. Justice Clifford with having first used this expression, in *Insurance Co.* v. *Moseley,* 8 Wall. 411, 19 L. Ed. 442, where he says: "Declarations of a party to a transaction, though he was not under oath, if they were made at the time any act was done which is material as evidence in any issue before the court, and if they were made to explain the act or to unfold its nature and quality, and were of a character to have that effect, are treated, in the law of evidence, as verbal acts, and, as such, are not hearsay, but may be introduced, with the principal act which they accompany and to which they relate, as original evidence, because they are regarded as a part of the principal act, and their introduction in evidence is deemed necessary to define that act and unfold its true nature and quality." While Mr. Wigmore, in discussing the admission of "verbal acts," criticises the suggestion as to unfolding, elucidating and explaining the nature of the act, he fully agrees with the view that the words accompanying such acts are clearly admissible. Such words, together with the act, constitute the completed action. To exclude them is to incur the danger of either losing or misinterpreting the significance of such action. Whether called part of the *res gestae* or not is immaterial. Instead of withholding any available information by the application of rigid rules of exclusion, the "more excellent way" is to admit all testimony which will enlighten the triers of fact in their quest for the truth. The better view is, not how little, but how much logically competent evidence is admissible. (10 R. C. L. 976; Note, 97 Am. St. Rep. 732.)

[7] In this case, the evidence tending to show that the accused had any motive for committing the crime is very slight indeed, if not negligible, whereas, there is much tend-

ing to create the suspicion that possibly Agee was the guilty agent—such as the fact that he had been supplanted in the woman's favor by the accused; that she was afraid of him; that he was following her on the evening of the murder and not long before its commission; that he had possession of a pistol, and that he was seeking to buy cartridges for it a short time before the crime was committed; and it is well settled that where there is a trend of facts and circumstances tending· clearly to point out some other person as the guilty party, the prisoner may introduce any ·legal evidence which is available tending to prove that another person committed the crime with which he is charged. 8 R. C. L. 185; *Carlton* v. *People,* 150 Ill. 181, 37 N. E. 244, 41 Am. St. Rep. 346; *Stout* v.. *State,* 174 Ind. 395, 92 N. E. 161, Ann. Cas. 1912 D, 37; Note, 37 L. R. A. (N. S.) 346.

We have two cases in Virginia in which the declarations of the deceased, not made in the presence of the accused, have been admitted as tending to show his guilt. *Cluverius* v. *Commonwealth,* 81 Va. 803; *Tilley* v. *Commonwealth,* 89 Va. 153, 15 S. E. 526. In the former case, the statement of the deceased was admitted, that a letter which she had received was the inducement and cause of her going from her home to Richmond, where the crime was committed.

While a large discretion must and should remain vested · in the trial court as to the admission of this class of testimony, it is always safer in cases depending upon circumstantial evidence alone, to admit rather than to reject, and this is the tendency of modern statutes and decisions relating to evidence. The testimony to which we have referred would have been clearly admissible on behalf of the Commonwealth in the prosecution of Agee for the ·crime, and in our judgment it is equally admissible in favor of the accused as tending to show that he was not guilty. This evidence tending to show motive on Agee's part should have

been admitted on behalf of the accused, and its rejection was prejudicial error.

[8, 9]    4. The court, at the instance of the Commonwealth, and over·the objection of the prisoner, gave this instruction:

(No. 2.)    "The court further instructs the jury that when a mortal wound is given with a deadly weapon in the previous possession of the slayer without any, or upon very slight, provocation, it is *prima facie* willful, deliberate and premeditated killing, and throws upon· the accused the necessity of proving extenuating circumstances, for the rule of law is that a person shall be taken to intend that which he does, or which is the necessary consequence of his act. Therefore, the court tells the jury that if you believe from the evidence beyond a reasonable doubt that the accused shot and killed the deceased, as charged·in the indictment, with a deadly weapon which was in the previous possession of the accused without any, or upon very slight, provocation, that *prima facie* the accused is guilty of willful, deliberate and premeditated killing unless it has appeared from the evidence in the case that there were extenuating circumstances."

That such an instruction has been frequently given in murder cases in which it was appropriate, is true.    It is also true, however, that instructions should relate to the evidence in the case on trial, and that it is harmful error to give an instruction based upon assumptions of fact which does not appear in the evidence.    In this case, while true that the deceased was shot with a pistol, there is no testimony which indicates that the prisoner ever had a pistol or any other deadly weapon.    In cases where the evidence shows or tends to show that the accused was in possession of such a weapon, and used it, such an instruction is manifestly proper, and the inferences which the jury may draw from the fact of such possession and use are correctly stated in the

instruction complained of. As there is no evidence in the record upon which the instruction could properly be based, the giving of it constitutes harmful error.

[10] . The court refused to give two instructions offered for the prisoner. One (C) reads thus: "The court instructs the jury that the law presumes that A. H. Karnes is innocent of the crime with which he now stands charged, and before there can be a conviction in this case the law requires the Commonwealth to prove by clear, distinct and reliable evidence, beyond a reasonable doubt, that A. H. Karnes fired the shot that killed Mrs. J. B. Kelly, and the fact alone, that he was present at the time she was killed, is not sufficient to justify the jury in convicting him." The other (D) reads thus: "The court instructs the jury that, notwithstanding the fact that A. H. Karnes was present at the time Mrs. J. B. Kelly was shot and killed, he is not to be prejudiced by the inability of the Commonwealth to point out any other criminal agent or person who committed the crime, nor is A. H. Karnes called upon to vindicate his own innocence by naming, or identifying, the guilty man, but he rests secure in the presumption of innocence until proof is adduced which establishes the fact beyond all reasonable doubt that he actually shot and killed the deceased, Mrs. J. B. Kelly, and if the Commonwealth has failed to prove by clear, distinct and reliable evidence beyond all reasonable doubt that he shot and killed the deceased, the law requires the jury to find him not guilty."

The other instructions which had been given, both for the Commonwealth and for the prisoner, with one exception, contained only the usual general statements of law governing trials in homicide cases, and were correct. The accused, however, was entitled to have the minds of the jury directed to the specific evidence in the case. They had nowhere been told that the mere presence of the accused at the time the murder was committed was not alone sufficient

to justify a conviction. That this is the law certainly cannot be doubted. *Kent* v. *Commonwealth,* 80 Va. 449-450; *McBride* v. *Commonwealth,* 95 Va. 826, 30 S. E. 454; *Goldman* v. *Commonwealth,* 100 Va. 878, 42 S. E. 923.

[11] In *McBride* v. *Commonwealth, supra,* it was held that it was error to instruct a jury that failure of the prisoner to disclose any other criminal agent was a circumstance to be considered by them in determining his guilt, and that he is not to be prejudiced by his own or the Commonwealth's inability to point out any other criminal agent.

In view of the evidence in this case, the accused was entitled to have the jury told distinctly and clearly that his mere presence at the time the crime was committed was not alone sufficient to justify a conviction. The refusal of these instructions was also harmful error.

Several other instructions offered for the prisoner were refused and exceptions thereto taken, but as they were either erroneous or mere repetitions in substance of instructions which had already been given in the case, the court properly refused them.

[12] 5. The prisoner moved the court to set aside the verdict upon the ground that the evidence was insufficient to justify the verdict of guilty. No good purpose would be served by summarizing all of this evidence. We will content ourselves with stating that according to the prisoner's testimony his relations with the deceased were friendly; that he had neither motive nor provocation to commit the crime; that the shot which killed the deceased was fired while the accused and she were together, out-of-doors, on a dark night, supposing themselves to be alone; that she was instantly killed by a bullet fired by some unknown person, whether directed towards him or towards the deceased he could not say, and that he immediately ran away from the place. There is much to support and little to controvert this evidence. In our opinion, the circumstances relied upon

97

to show the guilt of the prisoner, appearing in the record, are insufficient to sustain the conviction, and the trial court should have sustained the motion to set it aside. *Henderson* v. *Commonwealth,* 98 Va. 798, 34 S. E. 881; *Buck* v. *Commonwealth,* 116 Va. 1037, 83 S. E. 390; *Starke* v. *Commonwealth,* 116 Va. 1039, 83 S. E. 545; *Canter* v. *Commonwealth,* 123 Va. 794, 96 S. E. 284.

For the reasons indicated, this court will set aside the verdict, reverse the judgment and remand the case for a new trial, if the Commonwealth shall be so advised.

*Reversed.*