# Richmond

## Edward L. Daniels v. Marvin T. Morris, Jr.

June 14, 1957.

Record No. 4659.

Present, All the Justices.

The opinion states the case.

*Oren R. Lewis,* for the plaintiff in error.

*Paul Lee Sweeny* (*Lester Wood,* on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This case is before us upon a writ of error granted Edward L. Daniels to a final judgment of the Circuit Court of Fairfax County, entered on the 16th day of March, 1956, awarding Marvin T. Morris, Jr., the sum of $17,000. The motion for judgment was filed by Morris against Daniels, alleging alienation of affections of appellee's wife, Shirley Alward Morris.

The record discloses that Morris and his wife were married on May 25, 1944; that three children were born to them prior to their separation; that the defendant first came into the life of plaintiff's wife in January, 1950, when he made a down payment of $300 on a 1947 Plymouth automobile for her. Defendant claimed this was a loan

but admitted that it had never been repaid. On October 21, 1954, defendant purchased Mrs. Morris a television set and when plaintiff asked his wife where it came from she stated that her mother gave it to her. In addition to the television set, defendant gave plaintiff's wife money on occasions, at one time giving her $100, calling it a loan but admitting it was never repaid.

It was disclosed that plaintiff and his wife had lived a normal life up until the time defendant came into the picture; that they had their "ups" and "downs" but had been happily married; that plaintiff loved his wife and she loved him; that since learning of his wife's infidelity and her intimate association with defendant plaintiff's feelings toward his wife were not the same, and Mrs. Morris' feelings toward her husband had changed to such an extent that she wanted a divorce; that from May to December, 1954, during which time Mrs. Morris was carrying on a constant and intimate association with defendant, she had grown cool and indifferent toward her husband.

When plaintiff and his wife moved into a home at Falls Church defendant secured the telephone number before the listing appeared, whereupon telephone calls began to come to the home from defendant to plaintiff's wife at all hours of the day and night. An argument ensued between plaintiff and his wife over these calls which averaged two per day, resulting in plaintiff's leaving the home and taking up his abode with his mother. A list of long distance calls which had come to plaintiff's home was secured from the telephone company covering a period of six months, the company having destroyed the records of calls antedating that time.

The records showed that one "Dan Edwards" was calling a "Mrs. Edwards" at plaintiff's home. It was proved that these calls were made by defendant to Mrs. Morris. They originated at points where defendant had gone on business trips and extended from cities in North Carolina to New Jersey. The evidence discloses that sixteen such calls were made by defendant within a period of sixty days. The calls came collect to plaintiff's telephone and were paid for by defendant without plaintiff's knowledge.

When defendant was in and around Falls Church during the period (1953-1954) he was with plaintiff's wife at every available opportunity.

Plaintiff testified that as a result of his worry over his wife's intimate association with defendant he started drinking to excess and voluntarily went to the Western State Hospital at Staunton for treat-

ment. He remained there from November 4 to December 8, 1954. During plaintiff's stay at Staunton the record discloses that defendant took full advantage of his absence by his continued intimate association with Mrs. Morris. Upon plaintiff's return, the telephone calls continued to come from defendant to his wife.

The record discloses that Mrs. Morris and defendant were seen together at motels and restaurants where rooming facilities were available on many occasions; were frequently together in defendant's automobile, and on one occasion they visited defendant's home in the absence of defendant's wife. The defendant was extremely jealous of Mrs. Morris, and on an occasion while in a jealous rage, he tore the shirt from her back and she was forced to borrow a sweater from a Mrs. Quatman to wear home. On another occasion when they were together at a restaurant he accused her of flirting with soldiers and threw beer in her face.

It was disclosed that matters went from bad to worse until finally plaintiff broke off cohabitation with his wife, she and the children going to her mother's home and he to the home of his mother.

Prior to the filing of the suit Mrs. Morris attempted to dissuade her husband from suing the defendant. She stated that he had so much money that there was nothing plaintiff could do to him.

After the suit was instituted defendant brazenly telephoned plaintiff some thirty times at his mother's home. In one conversation plaintiff accused defendant of having sexual relations with his wife, to which accusation defendant replied, "I want you to know I never raped anybody in my life". On another occasion, in May, 1955, defendant telephoned plaintiff and told him that his (plaintiff's) wife was pregnant. On another occasion he telephoned plaintiff and said, "If you get every penny you asked for I'll still have plenty and I will get you with that". And on another occasion he threatened to "frame" plaintiff. None of these telephone conversations testified to by plaintiff was denied by defendant when examined as a witness.

The evidence further shows that defendant's wife did what she could to keep her husband from his acts of infidelity. Suffice to say that the record is replete with evidence showing that defendant was madly infatuated with plaintiff's wife and had broken up not only plaintiff's home but had destroyed the family relationship in his own home.

The questions posed by defendant on this appeal will be treated in the order stressed, the first being:

■ "Did the trial court err in refusing to grant appellant's motion to strike certain counts of the motion for judgment, and in orally instructing the jury to render three separate verdicts?"

In this connection defendant contends that the motion for judgment contained three counts, "alleging three separate causes of action", and therefore the court should have sustained his motion to strike Counts I and II. The record does not disclose that defendant moved to strike either Count I or Count II in its entirety. Apparently his motion was limited to striking paragraph (2) of Count II, on the grounds that the paragraph was indefinite and vague and could not be properly answered, "and on the further ground that the plaintiff has failed to furnish the defendant with the specific dates and places of the alleged misconduct."

This action was formed in three counts and in the following manner: Count I charged that the defendant committed acts of criminal conversation with plaintiff's wife and alleged alienation of affections as an aggravation thereof. Count II charged alienation of affections solely by acts and association other than criminal conversation. Count III charged solely acts of criminal conversation but did not allege alienation of affections as an aggravation thereof. Each count sought the recovery of both compensatory and punitive damages.

Count I was as follows: "The defendant, Edward L. Daniels * * * wrongfully, wickedly and unjustly, debauched and carnally knew the said Shirley Alward Morris, then and there still being the wife of the said plaintiff, and thereby the affection of the said Shirley Alward Morris for the said plaintiff was then and there alienated and destroyed, * * *."

The gravamen of Count II was not criminal conversation but acts of enticement which are alleged to have alienated the affections of plaintiff's wife. Nowhere in this count does the plaintiff charge the defendant with adultery. Here the plaintiff was pleading the several theories of his case in order to meet factual situations that might be disclosed by the evidence at the time of trial. The evidence might have been such as to justify the jury in finding in favor of the plaintiff under Count II and against him under Count I. Conversely, the evidence might have been such as to justify the jury in finding for the plaintiff under Count I and against him under Count II. Or it might have been, as developed, that the jury would find for the plaintiff under both Counts I and II.

■ Defendant, in his answer and grounds of defense filed prior to

trial, moved the court to strike all of Count III, which motion the court overruled on the theory that it was possible for the evidence to be such that the plaintiff would be entitled to recover under Count III of the motion. If for instance the evidence was such that the jury found that the defendant committed criminal conversation with plaintiff's wife, and further found that such acts of criminal conversation did not result in alienating the affections of the wife, the jury could have found for the plaintiff under Count III and against him under Count I. This follows from the fact that alienation of affections is not conclusively presumed to result from acts of criminal conversation, but whether or not it does result is a question of fact to be determined by the jury. As is said in 42 C. J. S., Husband and Wife, § 700 [Pleading], p. 356:

"While actions for alienation and criminal conversation may properly be joined, as shown in Actions §§ 75, 92, such causes of action should be stated in separate counts. Where they are joined, recovery may be had for criminal conversation although there is no proof of alienation."

See also *Parker* v. *Gordon*, (1st Cir.), 178 F. 2d 888, 893; *Hargraves* v. *Ballou*, 47 R. I. 186, 189, 131 A. 643.

The latter part of the first question queries: "Did the trial court err * * * in orally instructing the jury to render three separate verdicts?" Suffice it to say that there is no such oral instruction contained in the record and there is no merit in this contention. Neither is there merit in the contention that the plaintiff failed to furnish the defendant with specific dates and places of the misconduct alleged. The bill of particulars was ample for this purpose.

The second question presented is: "Did the trial court err in entering judgment upon three separate verdicts of the jury, all for the same cause of action, two of which were for compensatory damages only, and one of which was for punitive damages only?"

The basis for this question is the fact that the jury returned its verdict divided as follows: It granted the plaintiff $4,000 compensatory damages under Count I; $4,000 compensatory damages under Count II; and $9,000 punitive damages under Count III. Upon receipt of the jury's verdict the trial court immediately polled the jurors individually and asked if they intended by their verdict to give $8,000 compensatory damages on Counts I and II, and $9,000 punitive damages on Count III, making a total verdict of $17,000, or whether they intended a total verdict on Counts I and II of $4,000

compensatory damages, and $9,000 punitive damages on Count III, making a total of $13,000, to which the jury replied that they intended to render a verdict of $8,000 compensatory damages on Counts I and II, and $9,000 punitive damages on Count III, making a total verdict of $17,000. The question of the amendment of the verdict was carefully considered by the trial judge and discussed with counsel before judgment was entered thereon. The record discloses that no objection was made nor exception taken to the court's action on the verdict until ten days after it had been rendered and the jury discharged, at which time the defendant filed a motion to set the verdict aside. Under such circumstances the court's failure to disturb the verdict was plainly right, and there is no merit in the assignment. *Porterfield* v. *Commonwealth*, 91 Va. 801, 806, 807, 22 S. E. 352; *Remine and Meade* v. *Whited*, 180 Va. 1, 13, 21 S. E. 2d 743, 747; *Cape Charles Flying Service* v. *Nottingham*, 187 Va. 444, 454, 47 S. E. 2d 540, 545; *Northern Va. P. Co.* v. *Bailey*, 194 Va. 464, 473, 73 S. E. 2d 425, 430; Burks Pleading and Practice, 3rd ed., p. 510.

The third question is: "Did the trial court err in permitting plaintiff's wife to be called as an adverse witness?"

In this connection the court permitted plaintiff to call his wife under the provisions of § 8-291, Code of Virginia, 1950, which provides that a party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination.

We said in *Butler* v. *Parrocha*, 186 Va. 426, 431, 43 S. E. 2d 1, 4:

"It is clear that the intent of the legislature (referring to § 8-291) was, first, to compel a litigant, if called by another party to the cause, to testify in behalf of such other party; and, second, to permit any litigant to call and cross-examine any person 'having an adverse interest' in the outcome of the litigation, whether or not a party. The only conclusion to be drawn from the language of the act and the context of the words, 'having an adverse interest' is that the legislature intended to include, first, a party to the litigation, and second, a person, though not a party, who had a financial or other personal interest in the outcome. The legislature did not mean to include a party merely because his testimony was or would be adverse to the party calling him. 'Adverse interest' was used in its common and accepted meaning and was not used synonymously with 'adverse testimony'."

In this instance Mrs. Morris was not called as one whose testimony was necessarily adverse but rather as "an adverse witness", one having

a personal interest in the outcome of the litigation. That such interest was here present can hardly be denied. The motion for judgment attacked her most priceless possession—her virtue; it branded her as an adulteress. Further, her fitness to remain the custodian of the minor children, and her right to support money from her husband were for her consideration. As a practical matter her interest in the outcome of the litigation was definitely real, and she had good reason to defend her reputation and conduct.

In the case of *Butler* v. *Parrocha, supra,* at page 433, it was said:

"The trend of Virginia decisions is to relax the strict rules of evidence in the interest of developing the whole truth on all issues. The general rule adopted gives great latitude to the discretion of the trial court as to the order in which witnesses may be called and the manner of their examination. The exercise of this discretion will not be disturbed unless it has been abused or substantial harm has been done to the complaining party."

There is no merit in the assignment.

■ The fourth question presented is: "Did the examination of plaintiff's wife by plaintiff's counsel in this case violate the provisions of Code, § 8-289?"

Section 8-289 provides that neither the husband nor the wife shall, without the consent of the other, be examined in any case as to any communication privately made by one to the other while married. This section should be read in connection with § 8-287 which provides that husbands and wives are competent witnesses to testify for or against each other in all cases, civil and criminal, except as otherwise provided. We have invariably held that the object of § 8-289 was to give to both spouses the right to object to the other testifying in violation of the section. *Menefee* v. *Commonwealth,* 189 Va. 900, 55 S. E. 2d 9.

Before Mrs. Morris took the stand counsel for the defendant made a general objection to her testifying; whereupon the trial judge said: "In the first place, I don't know what questions they are going to ask, but they don't have to deal with questions between Mr. and Mrs. Morris." The record fails to show that any questions concerning private communications between husband and wife were involved, and it is abundantly clear that no objections or exceptions were interposed by defendant's counsel to any question propounded. (Rule 1:8)

■ The fifth question is: "Did the plaintiff's counsel have the right

to cross-examine the plaintiff's wife whom he had called as an adverse witness, and to contradict her by the use of previous statements made by her and reduced to writing?"

It appears that prior to the trial Mrs. Morris was called to the office of plaintiff's attorney and there examined under oath regarding her relationship with defendant. This examination in the attorney's office was extensive; Mrs. Morris readily admitting her relationship with defendant. When she was called as an adverse witness she emphatically denied the admissions theretofore made. The procedure employed at the trial was to this effect: The plaintiff's attorney would ask the wife regarding specific happenings between her and the defendant. When she would reply in the negative the previous statement taken in the attorney's office was exhibited to her and she was asked whether or not she made that statement. This was done for the purpose of impeaching the witness. The cross-examination thus conducted was done in the manner directed by the trial judge. While we do not condone this practice, at no time during the trial was objection made to the use of the previous statement nor was there objection to the method of cross-examination.

No objection to the admissibility of the statement having been made, and no grounds of objection having been stated by defendant during the trial, he may not now, under the provisions of Rule 1:8, raise such objection in this court for the first time. The applicable part of the rule provides:

"In civil and criminal cases, all objections to writs of every kind, pleadings, instructions, notices, the admissibility of evidence, or other matters requiring a ruling or judgment of the trial court, shall state with reasonable certainty the ground of objection, and unless it appears from the record to have been so stated, such objections will not be considered by this court except for good cause shown, or to enable this court to attain the ends of justice."

In construing this rule we said in *Harlow* v. *Commonwealth*, 195 Va. 269, 273, 77 S. E. 2d 851, 854:

"Rule 1:8 requires that the trial judge be informed of the precise points of objection in the minds of counsel so that he may rule intelligently, thereby avoiding delay and the expense incident to appeals, reversals and new trials upon grounds of objection which might have been obviated or corrected in the trial court. Therefore this rule must be adhered to unless the exceptions therein stated apply."

In repeated instances we have stressed the necessity for complying

with this rule for the reasons above stated. Manifestly, it is unfair for an adversary to sit idly by and fail to make timely objections to the rulings of the court during the progress of a trial where such rulings might then and there be corrected. For cases in which we have recently required adherence to the rule the following may be examined: *Bryant* v. *Bare*, 192 Va. 238, 248, 64 S. E. 2d 741, 747; *Babbitt* v. *Miller*, 192 Va. 372, 378, 64 S. E. 2d 718, 721, 722; *Consolidated Sales Co.* v. *Bank of Hampton Rds.*, 193 Va. 307, 319, 68 S. E. 2d 652, 659; *Davidson* v. *Jackson*, 193 Va. 330, 334, 68 S. E. 2d 524, 527; *Lewis* v. *Commonwealth*, 193 Va. 612, 623, 70 S. E. 2d 293, 300; *Twohy* v. *Harris*, 194 Va. 69, 75, 72 S. E. 2d 329, 332; *Newton* v. *City of Richmond*, 198 Va. 869, 870, 871, 96 S. E. 2d 775, 777.

In addition to what we have said regarding this question the court, at the specific instance and request of the defendant, gave Instruction J, wherein the jury was instructed concerning the effect of plaintiff's wife's previous statement as follows:

"The court instructs the jury that the statement made by Mrs. Morris in January, 1955, in the office of Mr. Sweeny (attorney for plaintiff) and used in this case for the purpose of contradicting Mrs. Morris and to show that she made prior inconsistent statements, is not to be considered as evidence in this case, except for the purpose of contradicting the witness."

Obviously it would be improper, in view of defendant's failure to except to the admission of the January, 1955 statement, and in view of his requested instruction, to now hold that the objection had been timely made.

The sixth question is: "Did the trial court err in refusing to grant Defendant's Instruction F, and in granting Plaintiff's Instructions 1, 3, 4, 5 and 6?"

In this regard the record discloses that the court granted eight of the nine instructions offered on behalf of defendant, excluding only Instruction F, which was fully covered by other instructions, especially Instruction C, offered by defendant. The five instructions (1, 3, 4, 5 and 6) offered by plaintiff, were generally revised to meet the objections cited by defendant, and as amended we see no reversible error in them.

The seventh and final question is: "Was there sufficient credible evidence to support either alienation of affection or criminal conversation or both?"

The answer to this must be in the affirmative.

Here it is worthy of note that defendant raised this issue in his motion to strike the evidence at the conclusion of plaintiff's testimony. The motion was overruled and was not renewed at the conclusion of all the evidence. Thus defendant waived the first motion to strike. Burks Pleading and Practice, 4th ed., § 284, p. 510; Wigmore on Evidence, 2nd ed., § 2496; *Rawle* v. *McIlhenny*, 163 Va. 735, 740, 177 S. E. 214, 98 A. L. R. 930.

In arguing this assignment defendant employs only one and one-half pages of his thirty-page brief, and he erroneously deals with the evidence viewed in the light most favorable to him, this being contrary to the rule that where, on appeal, we are dealing with a case involving the verdict of a jury based upon conflicting evidence, which verdict bears the approval of the trial judge, all conflicts in the testimony and all just inferences deducible therefrom must be treated in the light most favorable to the prevailing party. 1 M. J., Appeal and Error, § 270, p. 690.

In his argument on this assignment defendant mainly insists that adultery has not been proved. Suffice it to say that the circumstances surrounding the relationship of these parties can lead to but one conclusion. As we said in *Kirby* v. *Kirby*, 159 Va. 544, 555, 166 S. E. 484:

"While the evidence is circumstantial, as frequently said in cases of this kind, 'ocular proof is seldom expected'. Adultery is peculiarly a wrong of darkness and secrecy, wherein the parties are rarely surprised; hence it follows that ordinarily the evidence is of necessity circumstantial. * * * 'The rule for the sufficiency of the proven facts to infer adultery is that, if they are not reasonably reconcilable with the assumption of innocence yet are so with that of guilt, the conclusion of guilt will be authorized.' "

Here one might ponder the question: For what purpose did the defendant, a married man fifty-two years of age, carry on the related intimate association with plaintiff's wife, a woman some twenty years his junior, over so long a period of time, destroying not only the marital tranquility of his own home but successfully destroying the marital happiness of the plaintiff and his wife? There can be but one rational answer to this question which has been properly resolved by the jury's verdict and approved by the trial judge.

We find no reversible error in the record, and the judgment is

*Affirmed.*