434 S.E.2d 330 (1993)
William Elwood WELLER, Jr.
v.
COMMONWEALTH of Virginia.
No. 1888-90-1.
Court of Appeals of Virginia.
August 10, 1993.
Rehearing En Banc Granted September 23, 1993.
*332 Randolph D. Stowe, Norfolk (Jon M. Babineau, Zoby & Broccoletti, P.C., Wilcox & Stowe, P.C., on briefs), for appellant.
Thomas C. Daniel, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BENTON, KOONTZ[*] and BRAY, JJ.
*331 KOONTZ, Judge.
William Elwood Weller, Jr., appellant, was convicted in a jury trial of capital murder, night-time arson of a dwelling, robbery, and two charges of use of a firearm in the commission of a felony. Weller received three life sentences for capital murder, robbery, and arson; he was sentenced to two and four years, respectively, for the firearm convictions. He contends that the trial court erred in: (1) excluding testimony that would have shown that someone else committed these crimes; (2) refusing to permit the defense to call James Miles as an adverse witness; (3) admitting the victim's statements to her sister the night before her death; and (4) excluding testimony regarding the description of a ring Weller offered to sell three weeks before the murder. Finding no reversible error, we affirm Weller's convictions.
Because Weller does not challenge the sufficiency of the evidence, we restate only those facts necessary to explain our holding. Thelma Baker was eighty-five years old when she was murdered in the early morning hours of March 21, 1989. The cause of death was "smoke inhalation after receiving multiple gunshot wounds." Baker's body was found incinerated in a fire at her home at 942 Oaklette Drive in the City of Chesapeake. She had been shot in her left arm, in the back of her head, and in her neck.
Weller, who had worked for Baker as a handyman for many years, was arrested on April 2, 1989. The police discovered a .22 caliber revolver and five rings in Weller's backpack. Those rings, which were identified at trial as belonging to Baker, were described as a diamond engagement ring, a wedding band, an Eastern Star ring, a turquoise ring and a large white gold diamond ring.
Three .22 caliber bullets were recovered from Baker's body. The bullets were deformed, as a result of impacting something *333 hard. However, the rifling characteristics of one bullet were consistent with those of the .22 caliber revolver found in Weller's possession at the time of his arrest. While incarcerated, Weller told a fellow inmate that he had shot Baker and burned down her house because he was interested in her jewelry.
A key issue at trial was whether Baker had the five rings, which were found in Weller's backpack, at the time of her death.
The day before her death, Baker told her sister, Arron Cannon, during a telephone conversation, that she was going to give her two ringsher engagement and wedding ringsto take to a jeweler to be repaired. Anne Swancey, another sister, testified that Baker always wore her engagement and wedding rings. Baker's hairdresser, Inez Johnson, testified that Baker was wearing her wedding ring, her engagement ring, a turquoise ring and an Eastern Star ring two or three days before she was murdered.
Approximately three weeks before the murder, Weller offered to sell a ring to Pamela Baker. Although Pamela Baker was permitted to testify that Weller had offered to sell her a ring, the trial court did not permit Pamela Baker to testify that Weller described the ring as "antiquish looking ... with a large green stone." On March 22, 1989, the day after Baker's murder, Weller entered an Appomattox jewelry store and requested an appraisal of a large white gold diamond ring, which was identified as Baker's ring. Weller told the jeweler he had found it outside a business with a metal detector. On that day, Weller telephoned a friend, Thomas Mussick, and told him he had found a ring using a metal detector.
At trial, the defense attempted to show that two other men, Kenny Dunbar and James Miles, committed the crimes for which Weller was charged. Weller proffered that the testimony of Charlene Dunbar and Elizabeth Lamore would place the men at the scene of the crime with a .22 caliber weapon and would establish motive. The trial court excluded a substantial portion of the proffered testimony.

I.
Weller contends that the trial court erred in excluding the testimony of Charlene Dunbar and Elizabeth Lamore. He contends that this testimony was relevant and tended to show that Kenny Dunbar and or James Miles committed or may have committed the crimes for which he was charged. The Commonwealth contends that this evidence was largely inadmissible hearsay and irrelevant.
"In Virginia, evidence that a crime was actually committed by someone other than the accused is admissible for the purpose of generating a reasonable doubt of the guilt of the accused." Charles E. Friend, The Law of Evidence in Virginia § 150 (3d ed. 1988). However, "[t]he evidence introduced must point directly to guilt of a third party." Id. Thus, "where there is a trend of facts and circumstances tending clearly to point out some other person as the guilty party, the [defendant] may introduce any legal evidence which is available tending to prove that another person committed the crime with which he is charged." Id. (quoting Karnes v. Commonwealth, 125 Va. 758, 766, 99 S.E. 562, 565 (1919)). The admissibility of circumstantial evidence tending to prove the guilt of a third person is left to the discretion of the trial court. Id.
Although circumstantial evidence tending to prove the guilt of a third party is to be liberally received, id., the evidence must be legally admissible. That is, the evidence must be relevant and material, and may not be hearsay. Because the evidence in question was not legally admissible, we find no error in the trial court's ruling excluding this evidence.
Weller proffered the testimony of Charlene Dunbar and Elizabeth Lamore. Based upon this proffer, the trial court refused to permit the witnesses to testify to the following: James Miles owned a .22 caliber gun; James Miles and Kenny Dunbar said they had seen the fire on Oaklette Drive; James Miles said he heard gunshots and screams from Baker's house and saw a *334 man running from Baker's house, and reported this to the police three or four days after the fire; James Miles had lived in Baker's neighborhood fifteen years ago and he had said that he wanted to buy a house there; James Miles said he knew the lady who lived in the burning house was rich and elderly; and James Miles spent extravagantly after the incident. However, the trial court permitted Charlene Dunbar to testify that Kenny Dunbar owned a.22 caliber gun and that she saw this weapon in his vehicle when she, Kenny Dunbar, and James Miles went to watch the fire at Baker's home.
Hearsay is testimony consisting of "`a narration by one person of matters told him by another,'" which is offered to prove the truth of its content. Evans-Smith v. Commonwealth, 5 Va.App. 188, 197, 361 S.E.2d 436, 441 (1987) (quoting Williams v. Morris, 200 Va. 413, 417, 105 S.E.2d 829, 832 (1958)). "The party seeking to have hearsay declarations `admitted as an exception to the general rule must clearly show that they are within the exception.'" Jones v. Commonwealth, 11 Va.App. 75, 88, 396 S.E.2d 844, 851 (1990) (quoting Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984)). The testimony relating what Kenny Dunbar and James Miles told the witnesses on the night of the crime is hearsay evidence. Weller points to no exception to the hearsay rule that would permit introduction of such testimony. Therefore, that testimony was properly excluded.
The remaining evidence, that James Miles owned a .22 caliber gun, spent extravagantly after the incident, had lived in Baker's neighborhood fifteen years ago, and reported his observations to the police several days after the crime is not relevant to any matter at issue. "Evidence is relevant in the trial of a case if it has any tendency to establish a fact which is properly at issue." Wise v. Commonwealth, 6 Va.App. 178, 187, 367 S.E.2d 197, 202-03 (1988). The proffered evidence does not tend to prove the proposition for which it was offeredthat Miles or Dunbar committed the crimes. There was no evidence tying Miles' weapon, spending habits, or prior residence in Baker's neighborhood to these crimes. The Commonwealth's expert excluded Miles' weapon as the murder weapon. Although defense counsel stated that Elizabeth Lamore would testify that Miles spent extravagantly after the murder, no connection was made between the crimes and Miles' spending habits. Furthermore, the fact that Miles used to live in Baker's neighborhood does not tend to show that he would murder her and burn down her house when he indicated that he wanted to buy a house in Baker's neighborhood. Even considering this evidence together, see Wynn v. Commonwealth, 5 Va.App. 283, 291, 362 S.E.2d 193, 198 (1987), it does not tend to show that Miles or Dunbar committed the crimes in question.
Therefore, because the excluded evidence constituted inadmissible hearsay and was irrelevant, we find that the trial court properly exercised its discretion in excluding the evidence.

II.
Weller also contends that the trial court erred in refusing to permit him to call James Miles as an adverse witness for the defense. Weller claims that Miles was an adverse witness because he refused to talk to defense counsel and may have committed the crimes. When Weller asked the court for leave to call Miles as an adverse witness, the court stated that it would not permit Weller to proceed against Miles as an adverse witness based solely on these grounds. The court indicated that Weller could call Miles to the stand and, if the witness proved to be adverse, the court would give defense counsel "additional latitude." However, Weller did not call Miles as a witness.
Code § 8.01-401(A), which applies in both criminal and civil actions, Trout v. Commonwealth, 167 Va. 511, 516, 188 S.E. 219, 221 (1936), provides that a party may call to the stand a witness "having an adverse interest" and may examine the witness "according to the rules applicable to cross-examination." The Virginia Supreme Court has construed the term "having an *335 adverse interest" to include, first, a party to the litigation, and, second, a person, though not a party, who has a financial or other personal interest in the outcome. Daniels v. Morris, 199 Va. 205, 211, 98 S.E.2d 694, 698 (1957); Matthews v. Hicks, 197 Va. 112, 122, 87 S.E.2d 629, 635 (1955); Butler v. Parrocha, 186 Va. 426, 431, 43 S.E.2d 1, 4 (1947). A nonparty witness does not have an "adverse interest" simply because his or her testimony is adverse to the calling party. Daniels, 199 Va. at 211, 98 S.E.2d at 699. See also Friend, supra § 22 ("The test is not whether the witness's testimony would necessarily be adverse, but whether the witness has an adverse interest.")
Additionally, the Virginia Supreme Court has held that Code § 8.01-401 also applies "where the witness has no adverse interest, but is shown to be adverse or hostile to the party introducing him." Nelson v. Commonwealth, 153 Va. 909, 919, 150 S.E. 407, 410 (1929).
Thus, even where the hostility of the witness has appeared for the first time while the witness is on the stand, through the witness's answers and demeanor during direct examination, the examining party may obtain leave to question the witness by cross-examination methods. The statute in question is merely declaratory of well-established Virginia practice.
Friend, supra § 22 (footnotes omitted). Application of this rule, however, is limited to instances when it is clear that the witness is in fact hostile or adverse at trial. See Pendleton v. Commonwealth, 131 Va. 676, 706, 109 S.E. 201, 211 (1921). The determination of whether a witness is "unwilling or hostile" is a matter that rests with the discretion of the trial court. 81 Am.Jur.2d Witnesses § 808 (1992).
We find no error in the trial court's ruling because Weller failed to prove that Miles had an "adverse interest" or was, in fact, adverse or hostile. Based upon the record before us, we cannot say that Miles had a financial or personal interest in the outcome of the trial so as to render him "adverse" within the meaning of Code § 8.01-401(A). Weller introduced no evidence showing that Miles had a financial interest in the outcome of the trial. Furthermore, the evidence Weller alleges tends to show that Miles may have committed the crimes does not warrant a finding that Miles had an "adverse interest." The trial court was entitled to find that the evidence showing that Miles viewed the fire, had a gun in his truck, was familiar with Baker's neighborhood, and spent extravagantly after the incident, did not demonstrate that Miles had a personal interest in the outcome of the trial. Additionally, because Miles never took the stand to testify at trial, Weller failed to establish that Miles was adverse or hostile in fact. Consequently, the trial court's refusal to declare Miles an adverse witness is not a basis for reversing Weller's convictions.

III.
Weller contends that the trial court erred in permitting Baker's sister, Arron Cannon, to testify about statements Baker made to her the night before her death. The testimony to which Weller objects is as follows:
A. I told Thelma I had had my ring fixed by the jeweler. And she shook her hand and her wedding ring
Q. And what did she say?
A. That hers was stillit shook whenever she(demonstrating)....
A. She was going to give them to me to carry back up to Silver Spring when I was there going to Dr. George the next time that I came. And I would take it to the jeweler and he would fix it so it wouldn'tit wouldn'tmine doesn't. (demonstrating).
Q. Did she tell you which rings she wanted to take to the jewelers?
A. Yes, her wedding ring and her engagement ring.
Weller claims that this testimony was inadmissible hearsay evidence offered to prove that Baker had the rings on her hand *336 the night before her death.[1] He further maintains that introduction of this testimony was prejudicial because the defense theory was that Weller had the rings in his possession prior to Baker's death. The Commonwealth, on the other hand, contends that the testimony was not subject to exclusion under the hearsay rule because it was not offered to prove the truth of its content; rather, it was admitted as circumstantial evidence tending to prove that Baker had the rings in her possession that night.
"`Hearsay is testimony which consists [of] a narration by one person of matters told him by another.'" Evans-Smith, 5 Va.App. at 197, 361 S.E.2d at 441 (citation omitted). However, "`[i]f the declaration is offered solely to show that it was uttered, without regard to the truth or falsity of its content, the declaration is not excluded by the hearsay rule.'" Speller v. Commonwealth, 2 Va.App. 437, 446, 345 S.E.2d 542, 548 (1986) (quoting Charles E. Friend, The Law of Evidence in Virginia § 225 (2d ed. 1983)). "However, the mere incantation that hearsay evidence is admitted to prove a proposition other than the truth of the assertion does not cure the hearsay problem. The proposition to be proved must be relevant to the issues at trial." Estes v. Commonwealth, 8 Va.App. 520, 523, 382 S.E.2d 491, 492 (1989). In addition, the probative value of the evidence must outweigh any unfair prejudicial effect. Friend, supra § 225 (3d ed. 1988).
Consistent with these principles, the Supreme Court of Virginia has ruled that an out-of-court declaration is admissible "when the declaration is not offered to prove the literal truth of the statement, but the statement's content is used as circumstantial evidence that a certain event occurred." Id. (citing Church v. Commonwealth, 230 Va. 208, 335 S.E.2d 823 (1985)). In Church, the Court held that a child's statement that sex is "dirty, nasty and it hurt" was "admissible as circumstantial evidence tending to establish the probability of a fact in issue," that the child had been sexually assaulted. 230 Va. at 212, 335 S.E.2d at 825-26.
Here, the trial court, relying on the holding in Church, ruled that Cannon's testimony was admissible as circumstantial evidence tending to prove that Baker had her wedding and engagement rings in her possession the night she made the statement. We agree. This evidence was not offered for the truth of its contentthat Baker wanted to get her rings fixed by a jeweler in Silver Spring. Baker's statement the night before her death that she wanted to get her rings fixed was circumstantial evidence that she possessed the rings that night. Thus, the evidence tended to prove a fact properly at issue.
Because this evidence was admissible for the purpose of proving that Baker had possession of these rings at the time of her death, the fact that this evidence might be inadmissible if offered for some other purpose is of no consequence. Evidence is not subject to exclusion simply because the evidence is inadmissible if offered for some other purpose, unless such admission would result in "extreme prejudice." Friend, supra § 225. "[I]t is a time-honored principle of evidence law that, in general, if evidence is admissible for any purpose, it is admissible." Id. Although introduction of this testimony was arguably damaging to Weller's theory of the case, it did not result in such "extreme prejudice" as to warrant exclusion. This evidence was not the only evidence tending to prove, circumstantially, that Baker possessed her rings at the time of her death. Inez Johnson's testimony that Baker possessed the rings three days prior to Baker's death contradicted Weller's assertion that he possessed one of them three weeks prior to Baker's death. It was for the jury to resolve that conflict in the evidence. Accordingly, we hold that the trial court did not err in admitting this testimony.

*337 IV.
Weller also assigns error to the trial court's exclusion of testimony by Pamela Baker. Pamela Baker was permitted to testify that three weeks prior to the murder Weller told her "[h]e was interested in selling an object to me, a ring." However, the trial court did not permit Pamela Baker to relate what Weller said regarding the description of the ring. Based upon defense counsel's proffer, Pamela Baker would have testified that "[i]t was antiquish looking, is the way he described it, with a large green stone."
This testimony was not offered to prove that Weller was willing to sell an antique ring with a green stone. Rather, the evidence was offered as circumstantial proof of the fact that Weller possessed the described ring prior to Baker's death. Weller's offer to sell the ring is consistent with his possession of the ring. When introduced for this purpose, this testimony tends to prove a fact at issue. Because the testimony was offered as circumstantial proof of a fact properly at issue, and was not offered to prove the truth of its content, the trial court erred in excluding this evidence.
However, an erroneous evidentiary ruling does not require reversal of a criminal conviction where the error is "harmless."
A criminal conviction shall not be reversed for an error committed at trial when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Trial error is presumed to be prejudicial and "a fair trial on the merits and substantial justice are not achieved if an error at trial has affected the verdict." We must reverse a criminal conviction "unless `it plainly appears from the record and the evidence given at the trial that' the error did not affect the verdict." An error does not affect the verdict if we can determine, "without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same."
Hanson v. Commonwealth, 14 Va.App. 173, 189-190, 416 S.E.2d 14, 24 (1992) (citations omitted). We conclude that the error in excluding a description of the ring was harmless because it did not affect the verdict.
The evidence showed that Baker had four of her rings in her possession shortly before her death and that Weller had all of Baker's rings after her death. No evidence established that Weller had possession of all of Baker's rings prior to her death. Thus, even "`had the error not occurred, the verdict would have been the same.'" Id. at 190, 416 S.E.2d at 24 (quoting Lavinder, 12 Va.App. at 1005, 407 S.E.2d at 911). Moreover, we are satisfied that Weller received a fair trial and that substantial justice has been achieved. Weller does not challenge the sufficiency of the evidence to support his convictions. The sufficiency of that evidence is not lessened by the error in preventing the disclosure of the description of the ring he offered to sell three weeks prior to Baker's death.
For these reasons, we affirm Weller's convictions.
Affirmed.
BENTON, Judge, dissenting.
For the reasons that follow, I would reverse the conviction and remand for a new trial.

I.
Over objection, the trial judge allowed the victim's sister to testify concerning the following conversation that she had with the victim the day before the victim was killed:
Q: Now, would you tell these ladies and gentlemen what the conversation was that you had with your sister on March the 20th of 1989.
A: I told Thelma I had had my ring fixed by the jeweler. And she shook her hand and her wedding ring
Q: And what did she say?
A: That hers was stillit shook whenever she(Demonstrating)
*338 Q: .... Tell us what, if anything, she said she was going to do with the rings.
A: She was going to give them to me to carry back up to Silver Spring when I was there going to Dr. George the next time that I came. And I would take it to the jeweler and he would fix it so it wouldn'tit wouldn'tmine doesn't. (Demonstrating)
Q: Did she tell you which rings she wanted to take to the jeweler's?
A: Yes, her wedding ring and her engagement ring.
This testimony was offered to prove that the victim (1) "shook her hand and her ring" and (2) said she would give her ring to the witness for delivery to the jeweler.
The majority holds that the victim's statement that she would give rings to the witness for delivery to the jeweler was not offered "to evidence the truth of the matter asserted," i.e., to prove that she intended to give the sister the rings for delivery. Even if I accept the majority's conclusion that the statement is not an explicit assertion that the victim had the rings, other parts of the witness's testimony concerning the victim's out-of-court statements cannot be so easily dismissed. The statement, "she shook her hand and her wedding ring," is an assertion offered "to evidence the truth of the matter asserted." Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981).
It is clear that the statement "she shook her hand and her wedding ring" can only be taken as an assertion to prove the truth of the matter asserted. The witness's recitation of the victim's out-of-court conduct of shaking her hand and her wedding ring was intended as an assertion that the victim possessed the rings at that time.[2] "Nonverbal conduct ... intended ... as an assertion and offered in evidence to prove the truth of the matter asserted falls within the ban on hearsay evidence." Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977). To the extent that the Commonwealth offered the victim's nonverbal conduct and statements, which were communicated to the witness, for the purpose of proving that the victim possessed the rings at the time of the conversation, the Commonwealth has offered this particular assertion as evidence of the truth of its contents. See Donahue v. Commonwealth, 225 Va. 145, 152, 300 S.E.2d 768, 772 (1983). The Commonwealth sought to have the jury assess the credibility of the victim through the witness's belief of the victim's truthfulness at the time the assertion was made over the telephone. That is an impermissible mode of proof. Id.

II.
I also disagree with the majority's conclusion that the trial judge properly excluded testimony that James Miles, who was in the vicinity of the house as it was burning, had a twenty-two caliber weapon. In his defense, Weller sought to prove that Miles had the opportunity and motive to commit the offense. The fact that Miles owned a twenty-two caliber weapon was other evidence that had a tendency to establish Weller's defense.
The Commonwealth argued that the evidence proved that Miles's gun "was virtually excluded by virtue of the ballistics tests on Weller's gun." I disagree. The evidence at trial proved that Weller's gun had rifling characteristics consistent with the recovered bullets. The evidence at trial also proved, however, that those same rifling characteristics are present in firearms manufactured by 48 different manufacturers and might be present in "several hundreds of thousands of ... 22 caliber weapons." This evidence did not exclude Miles's gun as the murder weapon. Accordingly, I would hold that testimony concerning *339 Miles's ownership and possession of a twenty-two caliber weapon was relevant, material, and was improperly excluded.

III.
I further disagree with the majority that the record does not prove that Miles was an adverse witness. An adverse witness is a "witness which the party knows in advance is hostile but which the party elects (or is forced) to call anyway." Charles E. Friend, The Law of Evidence in Virginia § 33(2) (1988). A party can ask the trial judge to declare a witness to be an "adverse witness" before the witness is on the stand. See Daniels v. Morris, 199 Va. 205, 211, 98 S.E.2d 694, 698 (1957). Moreover, a trial judge may, at any time, put appropriate questions to a witness to determine whether the witness is indeed adverse or hostile. Charles E. Torcia, Wharton's Criminal Evidence § 378 (1986).
Weller's counsel proffered to the trial judge that Miles refused to speak to him, that Miles was hostile to his inquiries, that Miles cooperated extensively with the Commonwealth, and that Miles had said Weller was at the scene of the fire. Moreover, Miles was alleged by Weller to be the person who committed the murder for which Weller was being tried. This proffer sufficed to establish that Miles's testimony was adverse and hostile to Weller.

IV.
I agree with the majority that the trial judge improperly excluded testimony by Pamela Baker concerning Weller's offer to sell a ring to her three weeks prior to the murder. I do not agree that the error was harmless.
"Trial error is presumed to be prejudicial and a fair trial on the merits and substantial justice are not achieved if an error at trial has affected the verdict." Hanson v. Commonwealth, 14 Va.App. 173, 189-90, 416 S.E.2d 14, 24 (1992). This case was entirely circumstantial. The Commonwealth's case relied in large measure upon proof that the victim possessed her rings the day before her death. The defense offered evidence that tended to contradict the Commonwealth's evidence. Barker's testimony may have been pivotal in convincing the jury that Weller's version of the events was more believable than the version offered by the Commonwealth.
Accordingly, I would reverse the convictions and remand for a new trial.

Upon a Petition for Rehearing En Banc

Before the Full Court
On August 20, 1993 came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on August 10, 1993 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on August 10, 1993 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.
NOTES
[*] When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.
[1] Obviously, Cannon could not see Baker's hand motions over the telephone. In context, we take this testimony to be a recitation and demonstration merely reflecting Cannon's experience concerning Baker's reasons for wanting the rings repaired, rather than a motion actually made by Baker during the telephone conversation.
[2] The majority opinion states in footnote 1 that "[o]bviously, [the witness] could not see [the victim's] hand motions over the telephone." Although I agree with that observation, I do not agree with the majority's assertion that the witness's testimony was merely a reflection of her "experience concerning [the victim's] reasons for wanting the rings repaired." The witness's testimony that the victim "shook her hand and her wedding ring" is an indication that it happened. The reasonable inference is either that the victim told the witness what she was doing or that the witness heard what she testified to.