# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **6th** *day of* **December, 2011**.


Thomas Haynesworth,                                                                          Petitioner,

  against           Record No. 0223-11-2
                    Richmond Convictions

Commonwealth of Virginia,                                                               Respondent.


Thomas Haynesworth,                                                                          Petitioner,

  against            Record No. 0224-11-2
                    Henrico Convictions

Commonwealth of Virginia,                                                               Respondent.


Upon a Hearing En Banc

Upon Petitions for Writ of Actual Innocence

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey,
Haley, Petty, Beales, Alston, and Huff


Shawn Armbrust (Ellen S. Kennedy; Thomas J. Widor; Peter Neufeld;
Olga Akselrod; Mid-Atlantic Innocence Project; Hogan Lovells US LLP;
The Innocence Project, Inc., on briefs), for petitioner.

Kenneth T. Cuccinelli, II, Attorney General (Alice T. Armstrong,
Assistant Attorney General II, on briefs), for respondent.


The Court has considered the petitions, the response by the Commonwealth, the records of these cases, and the record of the oral argument before the *en banc* Court on September 27, 2011, and finds that these petitions should be granted under Code § 19.2-327.13. Accordingly, this Court hereby grants the petitions, issues writs of actual innocence, and vacates the defendant's convictions.

Elder, J., with whom Petty, J., joins, dissenting.

I have no doubt that the majority is attempting to right what it perceives as a wrong in these cases. However, in order to do so, the majority must either authorize the Attorney General, in his discretion, to consent to the issuance of a writ of actual innocence in cases in which such writs would not otherwise issue or ignore the plain meaning of Code § 19.2-327. Neither is a prudent path to walk, for the personal views of the members of this Court should have no bearing on how this Court applies the law as written by the legislature. "Our province is not to make law, but to administer it, and we must, therefore, decide this case according to the settled law as it is written, and not permit a hard case to make bad law." Yancey v. Field, 85 Va. 756, 758, 8 S.E.2d 721, 721 (1889). Therefore, I respectfully dissent.

The issue is a relatively simple one. The statute provides that in order for a writ of actual innocence to issue, material in the record must "prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Code § 19.2-327.11(A)(vii). Here we have two victims of vicious sexual crimes, each of whom has positively identified Haynesworth as her attacker. One of the victims spent more than two hours with Haynesworth, went through a rigorous cross-examination at trial, and was believed by the jury. The only real "new" evidence in the record is that two similar crimes which occurred within a month of these offenses were proved to have been committed by another individual who resembled Haynesworth. On the record before us, neither of the victims in these cases has recanted her positive identification of Haynesworth or expressed any doubt about the identity of her attacker. How can this Court conclude under Code § 19.2-327.13 that no "rational trier of fact" could believe these victims' identifications of Haynesworth simply because DNA evidence establishes two other victims of similar crimes were mistaken and it is possible, as a result, that Haynesworth is innocent?

Despite acknowledging that, even with the new evidence, these cases would be affirmed on direct appeal, the Attorney General has taken the position that the evidence supports the issuance of the writs. Indeed, the Attorney General has conceded that the same person committed all of the relevant crimes. Since it is unquestioned that Haynesworth did not commit the crimes for which he was exonerated based

on the DNA evidence, the logical consequence of this concession, if accepted, would be to compel the conclusion that he did not commit the crimes before this Court.  However, the Attorney General also observed at oral argument that, but for his concession reflecting his belief that Haynesworth did not commit these offenses, a fact-finder could very well credit the identification testimony of the victims in these cases over the evidence relied upon by Haynesworth.  Given this important distinction, the actual innocence statutes simply do not permit issuance of the requested writs.  The fact that Haynesworth did not commit other crimes does not prove he did not attack these two victims.  The facts in these cases could not be more compelling.  The victims have not recanted, no one has confessed, and there is no direct evidence that Haynesworth did not commit these crimes.  The majority, which apparently accepts the Attorney General's concession without any development of the facts under Code § 19.2-327.12, renders the Attorney General's concession dispositive to the issuance of the writs.

The only time this Court has considered and accepted an Attorney General's confession of error in the context of the writ of actual innocence statutes was in Copeland v. Commonwealth, 52 Va. App. 529, 532, 664 S.E.2d 528, 530 (2008), but the facts in that case are in no way analogous to those in these cases.  In Copeland, scientific evidence, akin to DNA, established that the item in question was *not* a "firearm" as required by the statute.  52 Va. App. at 531, 664 S.E.2d at 529.  The certificate of analysis and an examination of the weapon in question affirmatively established Copeland's innocence of the crime charged.  In other words, the Attorney General merely conceded the irrefutable.

To the contrary in these cases, there is no direct evidence that exonerates Haynesworth.  The Attorney General has merely expressed his *opinion* that Haynesworth is innocent.  Overturning a conviction simply because the Attorney General believes the defendant is innocent judicially empowers him to pardon a convicted criminal, a power he does not have.  See Taylor v. Commonwealth, 58 Va. App. 435, 443, 710 S.E.2d 518, 522 (2011) ("The Governor . . . has the exclusive constitutional power to 'grant reprieves and pardons' after conviction." (quoting Va. Const. art. V, § 12)).  Similarly, granting a writ of actual innocence simply because the Court believes in petitioner's innocence amounts

to a judicial pardon. This Court has previously acknowledged such action is beyond the scope of our power, yet today ignores our responsibility to exercise only judicial powers and instead encroaches on the pardoning power of the Governor of the Commonwealth. See id. at 439, 710 S.E.2d at 521 (explaining that none of the three branches of government can "exercise the powers properly belonging to the others" (quoting Va. Const. art. III, § 1)); see also Copeland, 52 Va. App. at 532, 664 S.E.2d at 530 (cautioning against "imping[ing] upon the Governor's exclusive power over executive clemency"). Simply put, we do not have the power to do anything other than that mandated by the actual innocence statutes.

Perhaps the legislature should draft the statutes more broadly to allow us the freedom to correct perceived mistakes of the criminal justice system and grant petitions for writ of actual innocence in cases such as these. However, it is our judicial duty to apply statutes as written, not re-write the statutes to achieve an end that we consider more appropriate. I respectfully suggest that the action this Court takes today is inconsistent with our usual exercise of judicial restraint.[1]

## I.

## BACKGROUND

In 1984, Haynesworth was indicted for completed or attempted sexual assaults committed against five different women. Haynesworth's petitions for writ of actual innocence involve his August 10, 1984 convictions for rape, sodomy, abduction with intent to defile, and two counts of use of a firearm in the commission of those felonies against M.A. and his October 11, 1984 convictions for attempted robbery, abduction with intent to defile, and two counts of use of a firearm in the commission of those felonies against T.H.

---

[1] See, e.g., Johnson v. Commonwealth, 58 Va. App. 625, 641, 712 S.E.2d 751, 759 (2011); Lilly v. Commonwealth, 50 Va. App. 173, 181, 647 S.E.2d 517, 521 (2007); see also McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010).

Crimes Against J.S., D.K., and L.D.[2]

On January 3, 1984, J.S. was raped at her place of employment by a man brandishing a serrated knife. J.S. identified Haynesworth as her attacker from a photo array and positively identified Haynesworth at trial in 1984, stating there was no question in her mind that he was the person who raped her. Haynesworth was subsequently convicted of rape. However, on April 2, 2009, an analysis of buccal swabs taken from J.S. and Haynesworth during the initial investigation eliminated Haynesworth as a contributor of the foreign biological material found within J.S. The certificate of analysis further established that another individual, Leon W. Davis, could not be eliminated as a contributor.[3] Based on this biological evidence, the Supreme Court granted Haynesworth's writ of actual innocence and vacated his conviction for the rape of J.S. See In re Haynesworth, No. 090942 (Va. Sept. 18, 2009).

On January 21, 1984, D.K. was robbed and orally sodomized at knifepoint. Haynesworth was charged with these offenses, but a jury acquitted him. Even though Haynesworth was acquitted of these offenses, the Commonwealth joined Haynesworth's 2009 request for post-conviction DNA testing to determine whether Leon Davis may have also committed the other crimes with which Haynesworth was charged. Once again, the analysis eliminated Haynesworth as a contributor of the DNA evidence in the offenses involving D.K. but did not eliminate Davis.

Haynesworth was also indicted for the attempted robbery of L.D. The trial court entered a *nolle prosequi*, and Haynesworth was not convicted of that crime.

---

[2] Although the majority claims to have considered, *inter alia*, "the records of these cases," the order contains no recitation of the facts. Because I believe the sequence of events and some of the key facts related to those events are critical to the question of whether the writs should issue, I find it necessary to detail those facts here.

[3] The certificate of analysis stated the "probability of randomly selecting an unrelated individual with a DNA profile matching the foreign DNA profile . . . is 1 in greater than 6.5 billion" or "approximately the world population."

-5-

January 30, 1984 Crimes Against M.A. in Henrico County – Convicted

At about 8:30 p.m. on January 30, 1984, M.A. was rounding the corner of an apartment building when she encountered a man who repeatedly asked her for the time. M.A. first ignored his requests, and then tried to separate herself from him. However, the man then "suggested" that she stop and turn around slowly because he had a gun pointed at her. Seeing the gun, M.A. complied with the assailant's demand to walk toward him. The assailant then ordered her to go behind an air conditioning unit and forced her to perform oral sex upon him.

The gunman told M.A. they would have to move to a more secluded location. Holding the gun on M.A., he told her to "act like his girlfriend," and walked her up the street with his arm around her. The assailant engaged M.A. in conversation regarding her age, where she lived, where she went to school, and other things. The assailant told M.A. he was nineteen and his birthday was in June. He said that it was not the first time he had done this and would not be the last, and that he usually used a knife rather than a gun. The gunman walked M.A. into some woods. The assailant had M.A. perform oral sex upon him a second time and then raped her. After unsuccessfully trying to have anal intercourse with her, the gunman had M.A. perform oral sex a third time and then walked M.A. out of the woods.

The assailant gave M.A. some gloves to wear because it was cold and asked her to be his girlfriend. M.A. testified that she agreed and gave him her telephone number because she did not want to make him angry. He walked with her toward a nearby bar, kissed her, promised to call her, and left. When M.A. reached the bar, she immediately reported that she had been attacked and raped and later took the police to the location in the woods where the rape occurred. M.A. testified that the entire ordeal lasted approximately two hours.

M.A. testified that the assailant called her the following morning and asked her to meet him later that afternoon. M.A. agreed and went to the agreed-upon location, accompanied by undercover officers, but the assailant did not appear.

M.A. identified Haynesworth as her attacker from a photo array and positively identified Haynesworth at trial. M.A. also testified that she noticed the assailant's firearm was silver. When shown a picture of a toy gun found in Haynesworth's bedroom after his arrest, M.A. confirmed that the toy gun looked like the gun her attacker used in the commission of her rape. During cross-examination, defense counsel attempted to impeach M.A.'s testimony using prior statements to the police and her potential bias for lying about the alleged crimes. Further, defense counsel affirmatively questioned M.A.'s account of the perpetrator's height and had Haynesworth stand near M.A. in order to discount her identification of Haynesworth as her assailant.[4] Notwithstanding the lengthy cross-examination, M.A. testified she had "no doubt" that Haynesworth was the perpetrator. A certificate of analysis in the case indicated semen found in M.A.'s body and underpants was consistent with a blood "type O secretor." Haynesworth is a "type O secretor."

A jury convicted Haynesworth of rape, sodomy, abduction with intent to defile, and two counts of use of a firearm in the commission of those felonies and sentenced him to a total of thirty-six years' imprisonment.[5]

February 1, 1984 crimes against T.H. in Richmond – Convicted

At approximately 6:30 a.m. on February 1, 1984, T.H. was preparing to leave for work when she was confronted by a man with a gun beside the open car door. He demanded T.H.'s pocketbook, but she said she had no money. T.H. and the attacker talked near the vehicle for about ten minutes, during which the attacker threatened to rob or sodomize T.H. When asked if anyone lived with her, T.H. lied and told the assailant she lived alone.

---

[4] M.A. testified, and confirmed on cross-examination, that her assailant was approximately her height of five feet eight and one-half inches or slightly taller. The record establishes that Haynesworth is five feet six inches tall.

[5] The biological evidence gathered during M.A.'s medical examination was subsequently destroyed on May 24, 1988.

The perpetrator ordered T.H. to enter her home. With the gun at her back, T.H. returned to her home and unlocked the door with the gunman following her inside. When T.H. told him that her grandmother lived with her, he said he would "take care" of the grandmother if she awakened. As T.H. complied with the assailant's order to turn off the light, she heard her dog jump to the floor in a bedroom down the hallway, and heard her grandmother moving about. T.H. stepped into the hallway as the dog rushed past her toward the perpetrator. T.H. yelled to her grandmother, and the attacker fled from the house.

T.H. called the police immediately. T.H. gave a description of the attacker to the police and indicated he was about five feet ten inches in height. On three different occasions the police showed her separate arrays of photographs of possible suspects. T.H. did not pick any photographs out of the first two arrays. On the third occasion T.H. immediately selected Haynesworth's photograph when she saw it. T.H. identified Haynesworth in court as the person who had accosted her on the morning of February 1, 1984.

Newly-Discovered Evidence

The foundation of Haynesworth's petitions for writ of actual innocence is his claim that Leon Davis is the actual perpetrator of the crimes against M.A. and T.H. and that each of these women misidentified Haynesworth as her assailant. To support this claim, Haynesworth has introduced DNA evidence that eliminated him as a contributor of the biological evidence in the cases involving J.S. and D.K. Because J.S. and D.K. had each positively identified Haynesworth as her assailant, Haynesworth posits this evidence "conclusively establishes that [these] two victims of similar attacks[, M.A. and T.H.,] misidentified Haynesworth as their assailant." This evidence allegedly affects the convictions subject to the instant petitions for writ of actual innocence because the challenged convictions "share many idiosyncratic features" with the other rapes now conclusively determined by DNA evidence to have been committed by Davis. Haynesworth further points to the physical similarities between Haynesworth and Davis to support his position that M.A. and T.H. each misidentified Haynesworth as her assailant. From

the combined weight of these new pieces of evidence and the inferences resulting therefrom, Haynesworth argues that had this evidence been before the jury at each of Haynesworth's original trials, no reasonable juror would have convicted him. The Attorney General further avers that "Davis is the actual perpetrator of the crimes against M.A. and T.H."

II.

ANALYSIS

The Supreme Court has expressly instructed that the statutes governing writs of actual innocence provide "relief [to] only . . . those individuals who can establish that they did not, as a matter of fact, commit the crimes for which they were convicted." Carpitcher v. Commonwealth, 273 Va. 335, 345, 641 S.E.2d 486, 492 (2007). Our statutory authority to grant a writ of actual innocence is "an exceedingly narrow exception to Virginia's twenty-one-day rule." Turner v. Commonwealth, 56 Va. App. 391, 444, 694 S.E.2d 251, 278 (2010) (en banc) (Petty, J., concurring, joined by Kelsey & Haley, JJ.), aff'd, 282 Va. 227, ___ S.E.2d ___ (2011).

The more specific standard provides that a petitioner seeking a writ of actual innocence must prove the newly-discovered evidence:

> 1) "was previously unknown or unavailable to the petitioner or his trial attorney of record at the time the conviction became final in the circuit court;" Code § 19.2-327.11(A)(iv),
>
> 2) "is such as could not, by the exercise of diligence, have been discovered or obtained before the expiration of 21 days following entry of the final order of conviction by the court;" Code § 19.2-327.11(A)(vi),
>
> 3) "is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt;" Code § 19.2-327.11(A)(vii), and
>
> 4) "is not merely cumulative, corroborative or collateral." Code § 19.2-327.11(A)(viii).

Turner, 282 Va. at 239-40, ___ S.E.2d at ___ (quoting Carpitcher, 273 Va. at 343-44, 641 S.E.2d at 491).

Key to the resolution of the issue in these cases is the third prong "requir[ing] that the newly-discovered evidence be 'material and[,] when considered *with all of the other evidence* in the current record, will prove that *no rational trier of fact* could have found proof of guilt beyond a reasonable doubt.'" Id. at 240, ___ S.E.2d at ___ (quoting Code § 19.2-327.11(A)(vii) (emphases added)). A petitioner must meet this standard by clear and convincing evidence, see Code § 19.2-327.13, defined as that degree of proof "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established," Smith v. Commonwealth, 280 Va. 178, 185, 694 S.E.2d 578, 581 (2010).

Code § 19.2-327.11(A)(vii) requires this Court to view the newly-discovered evidence—if determined to be true, see Carpitcher, 273 Va. at 345, 641 S.E.2d at 492 (equating the materiality requirement of Code § 19.2-327.11(A)(vii) with "evidence [that] must be true")—in the context of the entire record and discard any previously-existing evidence that directly conflicts with those findings. If the remaining evidence is still legally sufficient to sustain the challenged convictions, then the petitioner has failed to produce clear and convincing evidence that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Code § 19.2-327.11(A)(vii); see, e.g., Moore v. Commonwealth, 53 Va. App. 334, 347, 671 S.E.2d 429, 435-36 (2009) (dismissing petitioner's writ despite the victim's recantation because "strong corroborating evidence" existed, "including the testimony of [an eyewitness], who saw petitioner and the victim engaged in sexual activity, [and] the victim's mother's testimony that petitioner told her he had sex with the victim").

An independent examination of all of the evidence in the record demonstrates the fatal flaw in Haynesworth's petitions: The fact that the DNA evidence proved that Haynesworth did not commit other rapes does not, as a matter of law, prove he did not commit these two crimes.[6] Sufficient evidence still

---

[6] Indeed, this is not a case in which the victims have recanted their testimony, e.g., Carpitcher, 273 Va. at 341, 641 S.E.2d at 489 (considering the recantation of the victim "that her trial testimony was not true"); the alleged true assailant has confessed to the crimes, e.g., Turner, 56 Va. App. at 396-97, 694 S.E.2d at 254 (considering the confession of petitioner's co-defendant "that he alone killed [the victim]"); or concrete facts prove Haynesworth did not commit these two crimes, e.g., Copeland, 52 Va. App. at

exists in the record to support his convictions, namely the identification of Haynesworth by both victims. Our jurisprudence is replete with recognition of the bedrock principle that a verdict can be based entirely on the testimony of one witness whom the trier of fact believes above all others. See, e.g., Nobrega v. Commonwealth, 271 Va. 508, 519, 628 S.E.2d 922, 927 (2006) ("[T]he victim's testimony alone, if not inherently incredible, is sufficient to support a conviction for rape.").

> The factors for determining the reliability of identification testimony include
>
>> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401, 411 (1972).

Haynesworth has not provided any evidence that either victim now believes her identification was inaccurate. After viewing and rejecting the photographs of suspects in two photo arrays, T.H. and M.A. each selected Haynesworth's photograph and positively identified him as her assailant within about a week after the crimes occurred. Haynesworth's trials for the incidents, during which the victims again identified him, took place within about eight months of the crimes. T.H. and M.A. both expressed certainty regarding the identification. T.H. testified that she had a fifteen-minute encounter with Haynesworth, first near her car where they discussed various subjects, then inside her residence. M.A. testified that she spent about two hours with Haynesworth while he held her at gunpoint, repeatedly sodomized and raped her, and engaged her in a lengthy personal discussion.[7]

Further, M.A. was subjected to a rigorous cross-examination during the 1984 trial in which defense counsel challenged the accuracy of M.A.'s identification of Haynesworth before the jury. Despite

---

531, 664 S.E.2d at 529 (considering a certificate of analysis containing "factual findings . . . [which] excluded the item tested from the statutory definition of 'firearm'" to vacate the petitioner's conviction for possession of a firearm as a convicted felon).

[7] Moreover, M.A.'s identification testimony was corroborated by other evidence in the record. M.A. testified that a toy gun found in Haynesworth's room resembled the weapon her assailant had used. The physical evidence found on her body after the crimes was consistent with Haynesworth's blood type.

significant attempts by defense counsel to undermine her credibility, M.A. remained steadfast in her testimony that Haynesworth was her assailant. In other words, M.A.'s credibility was squarely before the jury, which recognized the inconsistences known at that time and resolved them in the prosecution's favor. See Barker v. Commonwealth, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985) ("[T]he credibility of witnesses and the weight to be given their testimony are questions exclusively within the province of a jury."); Wilson v. Commonwealth, 31 Va. App. 495, 508, 525 S.E.2d 1, 7 (2000). Absent direct evidence that conclusively proves the juries were wrong in choosing to believe M.A. and T.H., we cannot divine the impact additional circumstantial evidence may have on a juror's assessment of reliability.

Despite the ongoing existence of evidence in the record from which a rational trier of fact could find proof of guilt beyond a reasonable doubt for the offenses against M.A. and T.H., the majority has determined the writs should issue. In doing so, it fails to give full consideration to all the facts in these cases and manifestly relies far too heavily on the Commonwealth's concession of error. Such *a priori* acceptance of the Attorney General's concession is in direct contravention of the role assigned to this Court by the General Assembly. See Copeland, 52 Va. App. at 532, 664 S.E.2d at 530 (instructing this Court to "independently examine[] the record presented to us" prior to "accept[ing] the Attorney General's concession without 'further development of the facts'" (quoting Code § 19.2-327.12)); cf. Conkling v. Commonwealth, 45 Va. App. 518, 524, 612 S.E.2d 235, 239 (2005) (noting opinions of the Attorney General are "clearly not binding" on the courts).

III.

CONCLUSION

Application of Virginia's existing statutory scheme to the evidence in the record categorically prohibits us from concluding the requested writs of actual innocence should issue. Eyewitness testimony from M.A. and T.H. affirmatively identifying Haynesworth as the perpetrator of the remaining two sets of crimes committed against them stands uncontradicted in the record before us. The fact that the Commonwealth now believes Haynesworth is innocent of *all* the crimes and avers it would not have

-12-

identified or prosecuted him for the crimes against T.H. and M.A. if it had, at that time, possessed the

DNA evidence exonerating him of the crimes against J.S. and D.K., simply is not a dispositive factor

under the very narrow statutory scheme we are required to apply. Although this may seem to be a

compelling case requiring us to correct an injustice, unless and until the legislature gives us the tools to

correct such perceived errors resulting from an otherwise proper application of the judicial process, we are

powerless to act.[8]

When we decide cases for extra-judicial reasons, we risk doing damage to the law in ways we

never intended.

> Great cases like hard cases make bad law. For great cases are called great,
> not by reason of their real importance in shaping the law of the future, but
> because of some accident of immediate overwhelming interest which
> appeals to the feelings and distorts the judgment. These immediate interests
> exercise a kind of hydraulic pressure which makes what previously was
> clear seem doubtful, and before which even well settled principles of law
> will bend.

N. Sec. Co. v. United States, 193 U.S. 197, 400-01, 24 S. Ct. 436, 487, 48 L. Ed. 679, 726 (1903)

(Holmes, J., dissenting).

Therefore, I respectfully dissent.

---

[8] This is not to say that Haynesworth does not have an avenue to seek exoneration. The "traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency." Herrera v. Collins, 506 U.S. 390, 417, 113 S. Ct. 853, 869, 122 L. Ed. 2d 203, 227 (1993). In fact, the Governor has previously ordered Haynesworth's release from prison based on this evidence. I see no reason he would look with disfavor on a pardon request joined in by the Attorney General and the two prosecuting Commonwealth's Attorneys.

Beales, J., dissenting.

I respectfully dissent. The statute says what the statute says. The General Assembly could have written the actual innocence statute to provide that a concession of fact by the Attorney General (or by the Commonwealth's Attorney of the jurisdiction in which the petitioner was convicted) should receive considerable weight, beyond that of the victim's own identification of the perpetrator – or even be binding on the Court. However, the General Assembly did not add or insert anything in this tightly written statute to allow this Court to grant the petition unless we can conclude – by clear and convincing evidence – that no rational factfinder in the Commonwealth of Virginia could decide that Mr. Haynesworth was guilty beyond a reasonable doubt of the offenses for which he had been convicted in M.A.'s case. Code § 19.2-327.13; see Code § 19.2-327.11(A).[9] And the same standard, of course, holds true in T.H.'s case.

There is considerable case law in Virginia that makes clear that a defendant in a sexual assault case can be convicted by the factfinder solely on the testimony of the victim – and without any further corroboration. See Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 204 (1984) ("The reason for the rule is the typically clandestine nature of the crime. There are seldom any witnesses to such an offense except the perpetrator and the victim. A requirement of corroboration would cause most sex offenses to go unpunished."); see also, e.g., Nobrega v. Commonwealth, 271 Va. 508, 519, 628 S.E.2d 922, 927 (2006); Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Snyder v. Commonwealth, 220 Va. 792, 796, 263 S.E.2d 55, 57 (1980); Poindexter v. Commonwealth, 213 Va. 212, 217, 191 S.E.2d 200, 204 (1972); Wilson v. Commonwealth, 46 Va. App. 73, 88, 615 S.E.2d 500, 507 (2005); Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991); Garland v.

---

[9] Among the pleading requirements of the actual innocence statute, Code § 19.2-327.11(A)(vii) requires the petitioner to present "previously unknown or unavailable evidence" that "is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found" the petitioner guilty beyond a reasonable doubt. Code § 19.2-327.13(ii) authorizes this Court to grant a writ of actual innocence and vacate a conviction "only upon a finding that the petitioner has proven by clear and convincing evidence all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11, and upon a finding that no rational trier of fact could have found proof of guilt beyond a reasonable doubt . . . ."

-14-

Commonwealth, 8 Va. App. 189, 191-93, 379 S.E. 2d 146, 147 (1989). The Supreme Court of Virginia has explained, "it is clear that the victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction." Fisher, 228 Va. at 299, 321 S.E.2d at 204.

In each of the two cases now before this Court involving Haynesworth, each victim has never wavered that Haynesworth perpetrated the crimes against her. Nothing in the record before this Court indicates that either woman wavers at all now from her identification of him as the perpetrator. M.A. spent at least two hours with her assailant as he repeatedly sodomized and raped her. She described to the police a silver gun with which the assailant threatened her while sexually assaulting her – and a silver toy gun was found in Haynesworth's bedroom when the police searched his house pursuant to a search warrant. M.A. testified in court at trial that this silver toy gun looked like the gun with which the perpetrator threatened her during his sexual assault of her. Unlike in the crimes involving Leon Davis, both M.A. and T.H. told the police that the perpetrator of the crimes against them threatened them by brandishing a gun (albeit a different colored gun).

Furthermore, neither woman identified her perpetrator in the first or second photo array that the police showed her. M.A. only identified her attacker when shown the third photo array, when she selected Haynesworth's photo. M.A. testified at trial that she "got a good look" at her assailant, who "was in my face, right, his face up in mine," and she testified at trial that she had no question that Haynesworth was the assailant. Similarly, T.H. rejected all of the photos in the first two photo arrays she was shown. Haynesworth's photo was included in the third photo array T.H. was shown, and T.H. testified, "As soon as I saw the picture, I picked him out, but I compared his picture to each picture to make sure it was the right one." T.H. also identified Haynesworth as her assailant at trial.

Just because two *other* women apparently misidentified Haynesworth as the man who sexually assaulted them, when later DNA tests suggested that their attacker was instead Davis, does not somehow mean that M.A. and T.H. *also* mistakenly identified Haynesworth as their attacker. Both of these women, especially M.A., were with the assailant for a significant period of time, and the assailant's face was not

covered. Both M.A. and T.H. identified Haynesworth as the assailant. Speculation as to whether M.A. and T.H. misidentified Haynesworth simply is not the test. As noted, the statute requires this Court to find by clear and convincing evidence that NO rational factfinder could conclude that Haynesworth committed the repeated sexual assaults of M.A. or the abduction and attempted sexual assault of T.H. Code § 19.2-327.13(ii). This is a very high standard that neither Haynesworth nor the Attorney General – despite their well-presented arguments – has reached.

This Court's decision to grant a petition for a writ of actual innocence in Copeland v. Commonwealth, 52 Va. App. 529, 664 S.E.2d 528 (2008), dealt with a very different situation than this Court faces today. In Copeland, after Copeland's conviction for possession of a firearm by a felon became final, a forensic examination of the purported firearm by the Commonwealth plainly established that it was not a firearm at all. Id. at 530, 664 S.E.2d at 529; see Code § 18.2-308.2(A). Copeland then sought a writ of actual innocence from this Court. Given that the results of the forensic examination of Copeland's purported firearm completely undermined the factual basis supporting his conviction for being a felon in possession of a firearm, this Court held that accepting the Attorney General's concession was "prudent" under the particular circumstances of that case. Copeland, 52 Va. App. at 532, 664 S.E.2d at 530. Nothing even similar to that occurred in the cases involving Haynesworth that are before us today.

While I certainly laud the Attorney General and the two Commonwealth's Attorneys involved in supporting Haynesworth's petitions in these cases for their clearly stated desire to promote justice,[10] their views of what they believe happened in these two cases do not overcome the clear, plain language of the actual innocence statute and what it requires. Even affording the views of these constitutional officers an appropriate amount of weight among the totality of the evidence before this Court in the exercise of its original jurisdiction, their views do not establish that NO rational factfinder could conclude that

---

[10] Each of these constitutional officers is "representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88 (1935). As "servant[s] of the law," their "twofold aim" in the exercise of their duties "is that guilt shall not escape or innocence suffer." Id.

-16-

Haynesworth is guilty of abducting T.H. – and certainly fail to establish that no rational factfinder could conclude that Haynesworth is guilty of the series of sexual assaults of M.A. over a two-hour time period. As the other dissents note, while the actual innocence statute's required threshold is not met here, that does not mean that a different result would not occur if clemency is sought from the executive branch. However, this Court and the judiciary simply do not have the power to pardon – a power that resides only in the executive branch.

Because the statute must be applied as it is enacted, based on its plain language, I respectfully dissent and would not grant Haynesworth's petitions for a writ of actual innocence.

Humphreys, J., dissenting.

Because I do not believe that the petitioner has met his statutory burden to establish the jurisdiction of this Court to consider his petitions, and because, in my view, the analysis and holding of the majority improperly confers upon the Attorney General a *de facto* pardon power constitutionally reserved to the Governor of the Commonwealth, I must respectfully dissent.

For this Court to have jurisdiction to consider a petition for writ of actual innocence, the statutory scheme contemplates that the alleged new evidence must be based, at least in part, upon newly-discovered non-biological evidence. The Code of Virginia also provides for a "writ of actual innocence based on biological evidence." Code § 19.2-327.2. However, such a writ is exclusively within the jurisdiction of our Supreme Court. Id. Thus, in order for this Court to have jurisdiction to consider these petitions, it must determine whether Haynesworth's petitions for writ of actual innocence are based on biological or non-biological evidence.

Different sections of the Code also provide additional insight as to the differences between writs based on biological evidence and those based on non-biological evidence. In a petition for a writ of actual innocence based on biological evidence, the petitioner must include "an exact description of the human biological evidence and the scientific testing supporting the allegation of innocence . . . ." Code § 19.2-327.3. However, in a petition for a writ of actual innocence based on non-biological evidence, the petitioner must include "an exact description of the previously unknown or unavailable evidence supporting the allegation of innocence . . . ." Code § 19.2-327.11. This broad requirement is clarified later in the section by the statement that, "[h]uman biological evidence may not be used as the *sole* basis for seeking relief under this writ but may be used in conjunction with other evidence." Id. (emphasis added).

Thus, if the only new evidence tendered to show innocence is biological in nature, the Supreme Court, not this Court, is the appropriate venue for seeking a writ of actual innocence. However, by including this last sentence in Code § 19.2-327.11, it is clear that the legislature intended that if there is

-18-

*any* newly-discovered non-biological evidence demonstrating actual innocence, this Court is the appropriate venue to pursue a writ.

In Haynesworth's case, he petitioned our Supreme Court for a writ of actual innocence for his conviction of the rape of JS based on a new test of the DNA recovered from JS' attacker. The Supreme Court issued a writ of actual innocence for that case on September 18, 2009. Haynesworth now challenges his convictions of rape, sodomy by force, abduction with intent to defile, displaying a firearm while committing abduction, and displaying a firearm while committing a rape in the case involving MA, and his convictions of attempted robbery, abduction, and two counts of displaying of a firearm in committing a felony in the case involving TH. However, in both instances, there is no biological evidence related to their actual cases. Instead, Haynesworth relies primarily on the biological evidence from the cases involving JS and DK as the basis for seeking similar writs in these cases. Thus, if the only "new" evidence of innocence is the DNA evidence relied upon by Haynesworth to show that he did not commit the offenses in other similar cases, this Court should dismiss his petitions for lack of jurisdiction.

Haynesworth attempts to avoid this result by arguing that, having asserted that another man, Leon Davis (Davis), committed other similar crimes, the totality of the evidence in those other cases, *ipso facto*, becomes "newly discovered evidence" for the purpose of the cases currently before us. Thus, a close examination of the nature of the non-biological evidence Haynesworth is relying upon in the present cases becomes a critical predicate analysis to determine whether or not this Court even has jurisdiction to consider the merits of his petitions.

Haynesworth essentially contends that having demonstrated his innocence of a similar offense actually committed by another, *a fortiori*, all of the evidence presented in any other similar cases must be considered as "newly discovered" evidence of Haynesworth's innocence in these cases. His asserted "new" evidence includes sexual assaults and attempted sexual assaults committed by Davis during the same period in which the assaults of MA and TH took place, the similarity in the locations of crimes known to have been committed by Davis, the physical resemblance between Haynesworth and Davis,

prior misidentifications in other cases of Haynesworth as Davis, the disparity in height between Davis and Haynesworth and its new significance given the identifications provided by the victims, and the *modus operandi* of Davis' crimes.

However, in my view, such assertions, standing alone, are not enough to establish our jurisdiction to consider the merits of whether writs of actual innocence based on non-biological evidence should issue. It is also Haynesworth's burden to establish that the new evidence is "material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt . . . ." Code § 19.2-327.11(vii). The key term is "material." Our Supreme Court has already held that new evidence is only material when it is true. Carpitcher v. Commonwealth, 273 Va. 335, 641 S.E.2d 486 (2007). "Additionally, '[e]vidence that relates to a matter that is properly at issue in the case is said to be material.'" Turner v. Commonwealth, 282 Va. 227, 250-51, ___ S.E.2d ___, ___ (2011) (quoting Charles E. Friend, The Law of Evidence in Virginia § 11-1 at 431 (6th ed. 2003)).

The law is also clear that the parties cannot convey jurisdiction on a court by agreement or concession. Morrison v. Bestler, 239 Va. 166, 169-170, 387 S.E.2d 753, 755 (1990). Further, "[j]urisdiction of the subject matter of the litigation must affirmatively appear on the face of the record, that is the record must show affirmatively that the case is one of a class of which the court rendering the judgment was given cognizance." Shelton v. Sydnor, 126 Va. 625, 630, 102 S.E. 83, 85 (1920). "While a court always has jurisdiction to determine whether it has subject matter jurisdiction, a judgment on the merits made without subject matter jurisdiction is null and void." Morrison, 239 Va. at 170, 387 S.E.2d at 755-56.

Thus, the peculiar posture of these cases is that, to determine in the first instance whether this Court has jurisdiction to consider Haynesworth's petitions, we must examine the alleged new non-biological evidence, without consideration of any concession of jurisdiction by the parties, and conclude as a threshold matter whether such evidence could even be presented to a jury. Only if we

answer that question in the affirmative may we consider the merits of the question of whether it would necessarily result in a different outcome. I believe every member of this Court shares the view that, but for consideration of the concession by the Attorney General, the facts and circumstances of the crimes committed by Davis do not have enough similarity to the record in the cases before us to be sufficient to warrant the issuance of writs. For the reasons that follow, I also believe that there are insufficient similarities to even establish that they would be admissible and thus material in a trial.

Therefore, any review of the newly-discovered evidence in these cases for either purpose must begin with an analysis of whether or not the evidence that Davis committed other crimes would be admissible in the first instance.

In these cases, the petitioner points to facts and circumstances in other cases that he asserts prove that another committed these offenses. In determining whether such evidence would be admissible, we have said that

> "In Virginia, evidence that a crime was actually committed by someone other than the accused is admissible for the purpose of generating a reasonable doubt of the guilt of the accused." Evidence tending to show that someone other than the defendant committed the crime generally raises a factual question for the jury. A defendant is entitled to present his version of the facts along with that of the prosecution so the jury may decide where the truth lies.

Oliva v. Commonwealth, 19 Va. App. 523, 526-527, 452 S.E.2d 877, 880 (1995) (quoting Weller v. Commonwealth, 16 Va. App. 886, 890, 434 S.E.2d 330, 333 (1993)) (internal citations omitted). However, it is not enough for Haynesworth or any petitioner to simply assert evidence that might raise a post-trial reasonable doubt. The plain language of Code § 19.2-327.11(A)(vii) places a much heavier burden on a petitioner. He must establish his actual innocence. Moreover, even in a trial setting, a defendant's right to present evidence suggesting that another committed the crime is not unfettered.

> *The right to present evidence in one's defense does not, however, permit a defendant to introduce evidence that merely suggests or insinuates that because a third party resembles the accused, the third party may have some connection to the crime.* Such evidence is irrelevant; it tends to confuse and mislead a jury unless "evidence [has been] introduced . . . [that] points directly to guilt of a third party." Thus*, only "where there is a trend of facts*

-21-

> *and circumstances tending clearly to point out some other person as the guilty party*, the [defendant] may introduce any legal evidence which is available tending to prove that another person committed the crime with which he is charged."

Id. (quoting Weller, 16 Va. App. at 890, 434 S.E.2d at 333; and Karnes v. Commonwealth, 125 Va. 758, 766, 99 S.E. 562, 565 (1919)) (emphases added). This analysis is highly fact specific. See Oliva v. Commonwealth, 19 Va. App. 523, 452 S.E.2d 877 (1995) (holding that the trial court erred in excluding the testimony of a witness who saw a person other than the defendant with a similar physical appearance and wearing nearly identical clothes as the defendant running from the scene of the crime); Karnes, 125 Va. 758, 99 S.E. 562 (holding that statements, including death threats, made by one other than the defendant to the victim should have been admitted at trial); and Elliott v. Commonwealth, 267 Va. 396, 593 S.E.2d 270 (2004) (holding that evidence of a prior incident in which someone other than the defendant brandished a gun at the victim was inadmissible, because it merely suggested that a third party could have committed the crime).

If the evidence *clearly* points to the guilt of someone other than the defendant, then evidence that is relevant and material must be admitted if it is otherwise admissible. It falls on this Court to make the decision of whether the evidence advanced by Haynesworth points clearly to another as the perpetrator of the offenses before us or merely does no more than suggest it.

In this case, there are certainly some similarities between the crimes committed by Davis and the two cases before us. For example, MA's attacker made her walk with her arm around him as if she were his girlfriend, just as Davis did with DP. In the attack on MA, the assailant began by demanding oral sex before moving on to intercourse. In TH's case, her attacker told her to get out of their car so they could go around the corner and she could give him "head." Davis' assaults often began with oral sex. Although the assailant used a gun during the attacks on MA and TH, MA's attacker said that he normally used a kitchen knife, and Davis used a knife during the commission of his crimes. However, these similarities lack any distinctive element and, the Attorney General's concession aside, they fall far short of establishing that the same person committed all of these offenses.

Moreover, there are also many differences between the various attacks that reinforce this conclusion. For example, all of the crimes known to have been committed by Davis involved the use of a knife while the assailant in the two cases before us used a gun. In the attack on TH, the attacker had a brown and black gun. It was constantly in her face or pointed at her. Her assailant began his encounter asking for oral sex, and no robbery occurred or was attempted. However, since the attack was cut short, there are few unique details about this attack, and the lack of such details certainly does not work to the advantage of a petitioner in these circumstances. In the attack on MA, her assailant had a silver gun. He asked if she had any money. Although she did not have any, she offered a class ring that her assailant did not take, yet the perpetrator of the other crimes relied upon by Haynesworth took both money and jewelry from his victims. Also contrary to the other crimes relied upon by Haynesworth, MA's assailant made her perform oral sex on him multiple times, but did not ejaculate in her mouth. He gave her his gloves and asked if she would be his girlfriend. He also called her the next morning. Further, Davis never attempted anal intercourse with any of his known victims, but MA's attacker did. Overall, MA was with her attacker and able to study and observe him for over two hours. MA and TH both clearly identified Haynesworth as their attacker in both a photo array and in court under oath, and neither victim has recanted those identifications. Further, MA was observant enough to note that her attacker was wearing blue jeans and an orange-brown (akin to tan) jacket with an alligator on it. Also, contrary to the facts in the cases before us, in Davis' attacks, he was never with the victim for any appreciable length of time. He never used a gun in his attacks, although in the case of DF, he mentioned a gun. Despite the multiple attempts at oral sex, the perpetrator never ejaculated in MA's mouth as Davis did in the case of DF. Davis is also known to actually rob his victims. In the case of DP and DK, he took a gold necklace and $60 respectively. However, as already noted, when MA told her attacker that she had a class ring, he said he did not want it.

Finally, and also unlike the facts in these cases, in the cases known to have been committed by Davis, when Davis is uninterrupted and leaves his victim by choice, he always insists they "stay put" or

count to 100 before they leave. He also threatened them if they went to the police. This is in contrast to what MA's attacker did, when he walked with her towards a diner after the attack concluded and called her the next morning.

Thus, unless the rules of evidence are ignored, the "new evidence" tendered by the petitioner and the Attorney General, at best does no more than suggest that Davis may have committed these offenses and, thus, the evidence tendered by Haynesworth would not be admissible to show that Davis was the person who actually committed the attacks on MA and TH.

Consequently, in my view, Haynesworth has not sufficiently established that this Court has the statutory jurisdiction to consider the merits of his petitions, including the effect of any concession by the Attorney General.

Moreover, even if I set aside my concerns about the jurisdictional posture of these cases, the statutory task of this Court is to review all of the evidence, new and old, and determine if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Code § 19.2-327.11(A)(vii). In my view, this statutory language also clearly limits our decision to grant or dismiss a writ of actual innocence only to evidence that would be admissible in a trial. Obviously if the "new" evidence were not admissible, no trier of fact would ever hear it, much less be swayed by it. Thus, in the case of both determining if we have jurisdiction to consider a petition in the first instance and also in connection with our ultimate task of determining whether a petition is meritorious, any "newly discovered" evidence considered for either purpose, must be evidence that would be admissible in court.

In addition and as noted by Judges Elder and Beales, even if the evidence in these other cases were admitted, a jury or judicial factfinder could nevertheless credit the testimony of the victims who identified Haynesworth as their assailant. Indeed, the Attorney General observed at oral argument that, but for his concession reflecting his belief and that of the Commonwealth's Attorneys of the jurisdictions which prosecuted Haynesworth, that he did not commit these offenses, a factfinder could very well credit the identification testimony of the victims in these cases over the evidence relied upon by Haynesworth.

-24-

When questioned about his view of the limits, if any, that might constrain a concession of the nature we have in this case, the Attorney General answered, correctly in my view, that any concession by him must be supported by other evidence in the record. Given the foregoing, assuming the jurisdictional impediment was overcome, the question upon which the outcome of these cases turns then becomes, "What is the legal effect of the Attorney General's concession?"

The majority answers that question by implicitly concluding that this Court is bound to grant these petitions and issue the writs because of it. My concern and disagreement with this approach is grounded in the plain language of the statute and the precedent this approach sets.

Because a trial is the historically preferred mechanism for testing the quality of evidence and determining guilt or innocence, the statute governing our actions in these cases sets the bar deliberately high for any petitioner seeking a writ of actual innocence. New evidence that merely raises doubt about the verdict or even second thoughts on the part of a prosecutor, are not legally sufficient to issue a writ and for such cases, executive clemency remains an available alternative. The statute explicitly states that for a writ to issue, this Court must base its judgment to that effect "*only* upon a finding that the petitioner has proven by clear and convincing *evidence* all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11, *and* upon a finding that no rational trier of fact could have found proof of guilt beyond a reasonable doubt, grant the writ . . . ." Virginia Code § 19.2-327.13 (emphases added).

The opinion of any attorneys in a case, including opinions in the nature of a concession from those that represent the Commonwealth, are expressly not recognized by the law as evidence, and judges remind juries of that fact on a daily basis. See, e.g., Waye v. Commonwealth, 219 Va. 683, 691, 251 S.E.2d 202, 206 (1979) (approving an instruction to "the jury that the [attorney's] statement was not evidence.") In my judgment, the plain language of the statute mandates a similar role for this Court when exercising our original jurisdiction in these cases.

Moreover, having set the policy and precedent in this case, any future similar concession by the Attorney General will necessarily require an equally similar result and, thus, we today effectively grant

the Attorney General the same power to pardon previously only reserved for the Governor of the Commonwealth in Article V, Section 12 of the Constitution of Virginia.

To make my position perfectly clear, I expressly note that the obligation of any and all attorneys who represent the Commonwealth in a criminal case is to seek justice rather than convictions,[11] and I very much applaud the efforts of the Attorney General and the Commonwealth's Attorneys involved in this case, to rectify what they consider are two wrongful convictions. My point is simply that, on the record before us, this statutory mechanism is not the appropriate vehicle for doing so. The affidavits of the Commonwealth's Attorneys of Henrico County and the City of Richmond reflect that they regret the original decision they made to charge Haynesworth in these cases, but their hindsight and that of the Attorney General based upon their professional re-evaluation of these cases are not the same thing as actual evidence of innocence. But for the concession of the Attorney General, and as he has also further conceded at oral argument, the "new evidence" in these cases unquestionably falls far short of pointing inexorably at another as the perpetrator. Thus, in the absence of newly-discovered *evidence* that would be *admissible* in court that clearly establishes both the jurisdiction of this Court to act and actual innocence of the crimes for which he was convicted, the plain language of the statute prevents writs of actual innocence from issuing based fundamentally upon the request of the Attorney General.

I respectfully suggest that, instead of conferring the *de facto* power to pardon on the Attorney General this Court should dismiss the petitions for the reasons stated. The Attorney General and the Commonwealth's Attorneys who prosecuted these cases might consider then joining the petitioner in seeking a pardon from the Governor who, unlike this Court, is not constrained in his decision by either the plain language of Code § 19.2-327.13 or the rules of evidence.

For these reasons, I would dismiss the petitions for writ of actual innocence.

---

[11] "The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done . . . ." Berger v. United States, 295 U.S. 78 (1935).

_____

This order shall be published.

A Copy,

Teste:

*original order signed by the Clerk of the Court of Appeals of Virginia at the direction of the Court*

Clerk